FILED

2024 Feb-20  PM 05:01
U.S. DISTRICT COURT
N.D. OF ALABAMA



## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

|  |  |  |
|---|---|---|
| **TERESA MADKIN, individually** | ) | |
| **And on behalf of similarly** | ) | |
| **Situated individuals,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:21-cv-1177-AMM** |
| | ) | |
| **AUTOMATED PERSONNEL** | ) | |
| **SERVICES, INC.,** | ) | |
| | ) | |
| **Defendant,** | ) | |

### PLAINTIFF'S UNOPPOSED MOTION TO DIRECT CLASS NOTICE AND GRANT PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiff, Teresa Madkin ("Plaintiff" or the "Settlement Class Representative"), respectfully moves for preliminary approval of the Settlement and for certification of the Settlement Class.[1]

## I.    INTRODUCTION

This litigation arises from a security incident (the "Incident"), as described in this subparagraph and as defined below. On November 17, 2020, APS became aware of unusual activity on its servers and immediately began an investigation, which discovered the Incident stemmed from a ransomware attack. APS, with the

---

[1] Unless otherwise noted, all capitalized terms are defined in the Settlement Agreement and Release, which is attached hereto as Exhibit 1.

assistance of an IT vendor, was able to fully restore its systems from backup data. APS thereafter engaged legal counsel and third-party forensic specialists to conduct a comprehensive forensic investigation into the Incident and the data potentially impacted. APS discovered certain files were potentially accessed by unknown actors and began a full and diligent review of the potentially accessed data to determine what information was present and to whom it related. After completing a review of that data, APS engaged a vendor to provide notification to all individuals potentially impacted by the Incident. On or about March 16, 2021, APS began providing written notice of the Incident to potentially affected individuals, including Plaintiff. Notice was ultimately provided to 299,253 individuals. The types of information impacted included name, date of birth, Social Security numbers, and financial account information.

On July 26, 2021, Plaintiff filed the Litigation in the Circuit Court for Jefferson County, Alabama against Defendant asserting claims on behalf of herself and all others similarly situated arising out of the Incident. On August 26, 2021, APS removed the Litigation to the United States District Court for the Northern District of Alabama.

Defendant filed a Motion to Dismiss Plaintiff's Class Action Complaint on September 1, 2021. On October 12, 2021, Plaintiff filed an Unopposed Motion to Amend Complaint in response in opposition to Defendant's motion. On October 13,

2021, the Court granted Plaintiff's Motion to Amend Complaint and denied Defendant's Motion to Dismiss as moot. On October 14, 2021, Plaintiff filed her First Amended Class Action Complaint. On October 25, 2021, Defendant filed a Motion to Dismiss Plaintiff's First Amended Class Action Complaint, to which Plaintiff filed a response in opposition on November 15, 2021. Defendant replied to same on November 22, 2021. On June 10, 2022, the Court held a hearing on Defendant's Motion to Dismiss and thereafter ordered limited supplemental briefing. The Parties filed supplemental briefing on June 24, 2022. On July 8, 2022, Defendant filed a response to Plaintiff's supplemental briefing. On September 27, 2022, the Court granted Defendant's Motion to Dismiss Plaintiff's First Amended Class Action Complaint, granting leave to file an amended complaint. On October 26, 2022, Plaintiff filed a Second Amended Class Action Complaint. On November 22, 2022, Defendant filed a Motion to Dismiss Plaintiff's Second Amended Class Action Complaint, to which Plaintiff filed a response in opposition on December 19, 2022. Defendant replied to same on December 29, 2022. The Court entered an Order on April 17, 2023, dismissing Claim IV of Second Amended Class Action Complaint with prejudice and otherwise denying Defendant's Motion to Dismiss. On May 1, 2023, Defendant filed an Answer to Plaintiff's Second Amended Class Action Complaint. The Parties thereafter agreed to pursue mediation before an independent private mediator.

Throughout the Litigation, and prior to and after the mediation, Class Counsel conducted an examination and investigation of  the facts and law relating to the matters set forth in the Complaint and engaged in  numerous discussions with Defendant's counsel regarding the claims therein,  including but not limited to, the discovery described above. On August 30, 2023, in  preparation for the mediation, Class Counsel requested APS produce certain documents including incident responses/forensic reports, reports disclosing  statistics about the nature and scope of the comprised data, APS data retention  policies in effect at the time of the breach and any changes thereafter, and the  results of all data compliance audits conducted in the three years prior to the breach. Defendant sent its own request for documents on September 6, 2023. The Parties produced certain documents in accordance with a mediation confidentiality  agreement.

On September 20, 2023, the Parties participated in a mediation before  Phillip W. McCallum of SCHREIBER ADR. Mr. McCallum is a well-known mediator with extensive experience in mediating federal class action lawsuits, including class actions. As outlined immediately above, prior to the mediation, the Parties engaged in discussions and the exchange of information preparing for mediation, including written communications and separate conversations with the mediator. The formal mediation session occurred on September 20, 2023, and lasted more than eight (8) hours. Following the September 20th session, the Parties continued to negotiate over

the next several weeks and reached an understanding in principle on November 17, 2023.

The Parties did not discuss attorneys' fees during the mediation, or at any time prior to agreeing to the essential terms of the Parties' Settlement and notified the Court of the progress towards resolution on November 10, 2023 by filing a Joint Motion to Extend Deadlines.

On November 17, 2023, the Parties reached an understanding in principle concerning the essential terms of a proposed settlement for the Litigation requiring submission of a final settlement agreement to the Court for preliminary approval.

The Parties now agree to settle the Litigation in its entirety, without any admission of liability, with respect to all Released Claims of the Settlement Class. The Parties intend this Agreement to bind the Settlement Class Representative, Defendant, and all Settlement Class Members who do not timely and properly exclude themselves from the Settlement.

The parties now wish to fully and finally resolve their dispute on a class-wide basis, pursuant to terms that were negotiated between them. Those terms are memorialized in the Settlement Agreement and Release, which are set forth more fully below, and attached hereto as Exhibit 1 ("Settlement Agreement and Release" or "S.A."). This Settlement Agreement provides for the resolution of all claims asserted, or that could have been asserted, against APS relating to the Data Security

Incident, by and on behalf of Plaintiff and Settlement Class Members.

The Settlement provides for the creation of a $1,375,000.00 non-reversionary common fund that will be used to pay for all resolution related sums, including: (i) out-of-pocket expenses at no more than $5,000.00 per each eligible Out-of-Pocket Loss Claimant; (ii) Payment for Settlement Class Members who claim they suffered Lost Time as a result of the Incident and can submit a self-verifying statement under penalty of perjury for Lost Time and be reimbursed for up to four (4) hours at Twenty Dollars per hour ($20/hour); (iii) All payments for costs of administration of the Settlement and Class Notice, including all costs to carry out the Notice Program; and (iv) Non-Monetary Relief, which includes Credit Monitoring for one year of single-bureau monitoring offer by Angeion Group. *See* S.A. ¶¶ 38-45.

## II. BACKGROUND

### A. Information About the Settlement

The parties agreed on and retained Phillip W. McCallum, Esquire of SCHREIBER DISPUTE RESOLUTION, a highly experienced mediator, to assist with settlement negotiations. Plaintiff's Rule 408 Mediation Statement and Defendant's Pre-Mediation Disclosures and Response to Plaintiff's Requests. The parties briefed their respective positions on the facts, claims, defenses, and assessments of the risk of litigation.

On September 20, 2023, the parties had a full-day mediation session with Mr.

McCallum. The negotiations were hard-fought throughout and the process was conducted at arm's length. After extensive arm's length settlement negotiations conducted through Mr. McCallum, the parties reached an understanding in principle on the essential terms of settlement on November 17, 2023. The subject of attorneys' fees, costs, and expenses (*i.e.*, the Fee Award and Costs that Plaintiff will seek should the Settlement be approved), subject to Court approval, was negotiated only after all substantive terms of the Settlement were agreed upon by the parties.

Based on Plaintiff's counsel's independent investigation of the relevant facts and applicable law, experience with many other data breach cases, including data breach cases in this District and before this Court, and the information provided by APS, Plaintiff's counsel submits that the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class. Consequently, the parties worked together to prepare a comprehensive set of settlement documents, which are embodied in the Settlement Agreement attached thereto.

**B. The Terms of the Settlement Agreement**

**1. The Settlement Class**

The proposed Settlement Class is defined as:

> All persons residing in the United States or its territories whose personally identifiable information was identified as potentially being  impacted in the November 2020 data security incident announced by  Automation Personnel Services, Inc. in March 2021 (the "Nationwide  Class"). *See* S.A. ¶ 31.

Excluded from the Settlement Class is the Judge presiding over this Litigation, the Judge's immediate family members, and any members of the Judge's judicial staff, the officers and directors of Defendant and their immediate family members, Class Counsel and their immediate family members, and persons who timely and validly request exclusion from the Settlement Class, and the legal representatives of each of these excluded categories of persons. S.A. ¶ 32.

### 2. The Settlement Benefits

Under the Settlement, Settlement Class Members are eligible to receive the following benefits:

- Reimbursement of Out-of-Pocket Losses for up to $5,000.00; and

- Reimbursement of attested Lost Time up to four (4) hours at twenty dollars ($20) per hour. S.A. ¶ 41.

Participating Settlement Class Members are subject to an individual aggregate cap of $5,000.00. Thus, Participating Settlement Class Members may submit claims for reimbursement of Attested Time, Out-of-Pocket Losses and Lost Time, but the combined claims will be subject to the individual aggregate cap of $5,000.00. S.A. ¶ 41.

Defendant further has implemented, and/or have agreed to implement, and agrees to maintain, one year of single-bureau credit monitoring offered by the Settlement Administrator for a period of no less than one (1) year after the Effective

Date ("Credit Monitoring"). Any costs associated with the Credit Monitoring will be paid from the Settlement Fund before the payment of any Valid Claims. S.A. ¶ 44.

### 3. Proposed Notice Program

Pursuant to the Settlement Agreement, the parties propose Angeion Groups (hereinafter "Angeion") to be appointed as Settlement Administrator. Angeion is a nationally recognized class action notice and administration firm that has designed a class notice program for this case, which the parties and Angeion believe is an effective program.

1.     Subject to Court approval, this Notice program The Notice Program has two components: (1) Mail Notice and (2) Notice on the Settlement Website. The Settlement Administrator shall send direct Mail Notice to all Settlement Class Members for whom Defendant can ascertain a mailing address from its records with reasonable effort, as updated through the use of a National Change of Address database. For any Mail Notices that are returned undeliverable with forwarding address information,  the Settlement Administrator shall re-mail the Mail Notice to the updated address as indicated. For any Mail Notices that are returned undeliverable without forwarding address information, the Settlement Administrator shall use reasonable efforts to identify updated mailing addresses and shall re-mail the Mail Notice to the extent updated addresses are identified. The Settlement Administrator need make only one attempt to re-mail any Mail Notice that is returned as undeliverable. S.A. ¶ 55.

2.     The Notice shall include a procedure for a Settlement Class Member to exclude himself or herself from (or "opt out" of) the Settlement Class by notifying the Settlement Administrator in writing of the intent to exclude himself or herself from the Settlement Class. Such written notification must be postmarked no later than the Opt-Out Deadline, as specified in the Notice. The written notification must include: (i) the name of this Litigation; (ii) the individual's name and address; (iii) a statement that he or she wants to be excluded from the Litigation; and (iv) the individual's signature. The Settlement Administrator shall provide the Parties with copies of all opt-out notifications, and a final list of all who have timely and validly

excluded themselves from the Settlement Class, which Class Counsel may move to file under seal with the Court no later than ten (10) days prior to the Final Approval Hearing. Any Settlement Class Member who does not timely and validly exclude himself or herself shall be bound by the terms of the Settlement. S.A. ¶ 56.

3.     The Notice shall also include a procedure for Settlement Class Members to object to the Settlement and/or to Class Counsel's application for the Fee and Expense Award (as defined in Paragraph 69). Objections to the Settlement or to the application for the Fee and Expense Award must be filed electronically with the Court or Settlement Administrator, or mailed to the Clerk of the Court or the Settlement Administrator, Class Counsel, and Defendant's counsel. For an objection to be considered by the Court, the objection must be: (i) electronically filed by the Objection Deadline; or (ii) mailed first-class postage prepaid to the Clerk of Court, or Settlement Administrator, at the addresses provided at the Settlement Website, and postmarked by no later than the Objection Deadline, as specified in the Notice. For an objection to be considered by the Court, the  objection must also set forth the following:

  i.     the name of the Litigation;

  ii.     the objector's full name, address, email address, and telephone number;

  iii.     an explanation of the basis upon which the objector claims to be a  Settlement Class Member;

  iv.     all grounds for the objection, accompanied by any legal support for  the objection;

  v.     the identity of all counsel who represent the objector, including any  former or current counsel who previously represented the objector and  may be entitled to compensation for any reason related to the  objection to the Settlement or the fee application;

  vi.     the identity of all counsel representing the objector who will appear at  the Final Approval Hearing;

  vii.     the number of times in which the objector has objected to a class action settlement within the five (5) years preceding the date on which  the objector files the objection, and the caption of each case in which  the objector has made such objections, and a copy

of any orders related to or ruling upon the objector's prior such objections that were  issued by the trial and appellate courts in each listed case;

viii.   the number of times in which the objector's counsel and/or counsel's  law firm have objected to a class action settlement within the five (5) years preceding the date that the objector files the objection for the ten (10) most recent objections, and the caption of each case in which the counsel or the firm has made such objections;

ix.   a list of any persons who will be called to testify at the Final Approval Hearing in support of the objection; and

x.   a statement confirming whether the objector intends to personally  appear and/or testify at the Final Approval Hearing. S.A. ¶ 57.

4.   The Mail Notice portion and Substitute Media Notice Portion of the Notice Program shall be completed by the Notice Deadline, excluding any re-mails for Mail Notices that are returned undeliverable. S.A. ¶ 58.

5.   The Settlement Administrator shall post the Notice on the Settlement Website in the form agreed to by the Parties and approved by the Court. The Notice shall be posted on the Settlement Website by the Notice Deadline. S.A. ¶ 58.

6.   Within ten (10) days after the Notice Deadline, the Settlement Administrator shall provide Settlement Class Counsel and Defendant's  counsel with one or more affidavits confirming that the Mail Notice and posting of Notice on the Settlement Website were completed in accordance with the Parties' instructions and the Court's approval. Class Counsel shall file such affidavit(s) with the Court as an exhibit to or in conjunction with Settlement Class Representative's motion for final approval of the Settlement. S.A. ¶ 60.

7.   All costs and expenses associated with providing Notice to Settlement Class Members and the implementation of the Notice Program including, but not limited to, the Settlement Administrator's fees, shall be paid exclusively out of the Settlement Fund. S.A. ¶ 61.

### 4.    Exclusion and Objection Procedures

The Notice shall include a procedure for a Settlement Class Member to exclude himself or herself from (or "opt out" of) the Settlement Class by notifying the Settlement Administrator in writing of the intent to exclude himself or herself from the Settlement Class. Such written notification must be postmarked no later than the Opt-Out Deadline, as specified in the Notice.  The written notification must include: (i) the name of this Litigation; (ii) the individual's name and address; (iii) a statement that he or she wants to be excluded from the Litigation; and (iv) the individual's signature. The Settlement Administrator shall provide the Parties with copies of all opt-out notifications, and a final list of all who have timely and validly excluded themselves from the Settlement Class, which Class Counsel may move to file under seal with the Court no later than ten (10) days prior to the Final Approval Hearing. Any Settlement Class Member who does not timely and validly exclude himself or herself shall be bound by the terms of the Settlement. S.A. ¶ 56.

### 5.    Attorneys' Fees, Costs, and Expenses

APS has agreed that, subject to this Court's approval, Class Counsel may request an award of attorneys' fees not to exceed one-third (33.33%) of the Settlement Fund and reimbursement of Litigation Costs and Expenses not to exceed $458,333.34.  S.A. ¶ 69. Notably, the parties did not negotiate this agreement or any other issue with respect to attorneys' fees, costs, and expenses until after they had

reached an agreement on Class relief. This motion will be filed at least thirty (30) days prior to the deadline for objecting to the proposed settlement, providing ample notice to Settlement Class Members. S.A. ¶ 69.

### 6.    Service Award

APS has agreed not to object to an application by Settlement Class Counsel requesting the Court award a Service Award to the named Plaintiff for the time and effort expended in the prosecution of this action (collectively, the "Service Award"). The Service Award to named Plaintiff should be awarded in an amount not to exceed Two Thousand and Five Hundred and no/100 dollars ($2,500.00). S.A. ¶ 70.

### 7.    Release of Claims

Under the Settlement, each Settlement Class Member:

"…Shall automatically be deemed to have fully and irrevocably released and forever discharged Automation Personnel Services, Inc., which includes its present and former direct and indirect, domestic and foreign parents, subsidiaries, divisions, affiliates, predecessors, successors, and assigns, and for each of them the present and former directors, officers, employees, agents, insurers or reinsurers, shareholders, attorneys, advisors, consultants, data security consultants or servicers, data security monitors or compliance providers, vendors, representatives, partners, joint venturers, independent contractors, wholesalers, resellers, distributors, retailers, predecessors, successors, and assigns (collectively the "Released Parties"), jointly and severally, of and from any and all liabilities, rights, claims, actions, causes of action, demands, damages, penalties, costs, attorneys' fees, losses, and remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, that result from, arise out of, are based upon, or relate to the Incident that were or could have been alleged in the Litigation, including, without limitation, any claims, actions, causes of action, demands,

damages, penalties, losses, or remedies relating to, based upon, resulting from, or arising out of: (i) the exposure, compromise, or disclosure of Settlement Class Members' PII; (ii) Defendant's maintenance, retention, storage, and destruction of Settlement Class Members' PII; (iii) Defendant's information security policies, procedures, and practices or training; and (iv) Defendant's notice of the Incident to Settlement Class Members (the "Released Claims"). S.A. ¶ 65.

## III.    ARGUMENT

### A. Certification of the Settlement Class is Appropriate

Prior to granting preliminary approval of a proposed settlement, the Court should first determine the proposed Settlement Class is appropriate for certification. *See* MANUAL FOR COMPLEX LITIG., § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is proper if the proposed class, proposed class representative, and proposed class counsel satisfy the numerosity, commonality, typicality, and adequacy of representation requirements of RULE 23(a), RULE 23(a)(1)–(4); *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1034 (11th Cir. 2012). Additionally, where (as here) certification is sought under RULE 23(b)(3), the plaintiff must demonstrate that common questions of law or fact predominate and that a class action is superior to other methods of adjudicating the claims. RULE 23(b)(3); *Amchem*, 521 U.S. at 615–16. District courts are given broad discretion to determine whether certification of a class action lawsuit is appropriate. *Greco v. Ginn Dev. Co., LLC*, 635 Fed. Appx. 628, 631 (11th Cir. 2015); *Hines v. Widnall*, 334 F.3d 1253, 1255 (11th Cir. 2003).

14

Courts throughout the Eleventh Circuit have noted—many times—that "[a] class may be certified solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue."[2]

"Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. This case meets all of the RULE 23(a) and (b)(3) prerequisites, and for the reasons set forth below, certification is appropriate.

### 1. The Proposed Settlement Class Meets the Requirements of RULE 23(a).

### a. Numerosity.

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." RULE 23(a)(1). "While 'mere allegations of numerosity are insufficient,' RULE 23(a)(1) imposes a 'generally low hurdle,' and 'a plaintiff need not show the precise number of members in the class.'" *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 684 (S.D. Fla. 2013) (citation omitted). Here, APS identified approximately 299,253 people in the Settlement

---

[2] *Domestic Air Trans.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993); *Iverson v. Advanced Disposal Servs., Inc.*, 2021 WL 4943585, at *3 (M.D. Fla. Aug. 6, 2021) (Toomey, M.J.), *report and recommendation adopted*, 2021 WL 4943586 (M.D. Fla. Sept. 17, 2021) (Davis, J.); *Flores v. Acorn Stairlifts, Inc.*, 2020 WL 9549903, at *1 (M.D. Fla. Jan. 31, 2020) (same) (Smith, M.J.) *report and recommendation adopted*, Case No. 6:19-cv-00844, ECF No. 49 (M.D. Fla. March 24, 2020) (Berger, J.).

Class. Thus, numerosity is easily satisfied.

### b. Commonality.

The second prerequisite to certification is commonality, which "requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and the plaintiff's common contention "must be of such a nature that it is capable of class wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011) (citation omitted). The commonality requirement presents a low hurdle, as it does not require that all questions of law and fact raised be common. *Muzuco v. Re$ubmitIt, LLC*, 297 F.R.D. 504, 514 (S.D. Fla. 2013). "[F]or purposes of RULE 23(a)(2) '[e]ven a single [common] question' will do." *Dukes*, 131 S. Ct. at 2556. RULE 23(a)(2) requires "only that there be at least one issue whose resolution will affect all or a significant number of the putative class members."[3] Here, commonality is readily satisfied.

The Settlement Class Members are joined by the common questions of law and fact that arise from the same event: the Data Security Incident. *See Manno*, 289 F.R.D. at 685. Specifically, Plaintiff alleged, among others, the following common

---

[3] *Sharf v. Fin. Asset Resolution, LLC*, 295 F.R.D. 664, 669 (S.D. Fla. 2014) (cleaned up) (quoting *Williams v. Mohawk Indus., Inc*., 568 F.3d 1350, 1355 (11th Cir. 2009)); *James D. Hinson Elec. Contr. Co. v. BellSouth Telecomms., Inc*., 275 F.R.D. 638, 642 (M.D. Fla. 2011) (citing *Williams*, 568 F.3d at 1355).

questions:

a. Whether APS had a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, using, and/or safeguarding their PII;

b. Whether APS knew or should have known of the susceptibility of its data security systems to a data breach;

c. Whether APS's security procedures and practices to protect its systems were reasonable in light of the measures recommended by data security experts;

d. Whether APS's failure to implement adequate data security measures allowed the Data Security Incident to occur;

e. Whether APS failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

f. Whether APS adequately, promptly, and accurately informed Plaintiff and Class members that their PII had been compromised;

g. How and when APS actually learned of the Data Security Incident;

h. Whether APS's conduct, including its failure to act, resulted in or was the proximate cause of the Data Security Incident, resulting in the loss of the PII of Plaintiff and Class Members;

i. Whether APS adequately addressed and fixed the vulnerabilities which permitted the Data Security Incident to occur;

j. Whether APS engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Plaintiffs and Class Members;

k. Whether Plaintiff and Class Members are entitled to actual and/or statutory damages and/or whether injunctive, corrective, and/or declaratory relief and/or an accounting is appropriate; and

l. Whether Plaintiff and Class Members are entitled to restitution as a result of APS's wrongful conduct.

*Such issues, focused on APS's conduct, satisfy commonality.*[4]

### c. Typicality.

The next prerequisite to certification, typicality, "measures whether a significant nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003); RULE 23(a)(3). A class representative's claims are typical of the claims of the class if they "arise from the same event or pattern or practice and are based on the same legal theory."[5] Simply put, when the same course of conduct is directed at both the named plaintiff and the members of the proposed class, the typicality requirement is met. *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

Here, typicality is satisfied for the same reasons as commonality. Specifically, Plaintiff's claims are typical of those of other Settlement Class Members because they arise from the Data Security Incident. They are also based on the same legal theory, i.e., that APS had a legal duty to protect Plaintiff's and Class Members' personal information. Because there is a "sufficient nexus" between Plaintiffs' and

---

[4] *See, e.g., In re Countrywide Fin. Corp. Cust. Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *3 (W.D. Ky. Dec. 22, 2009) ("All class members had their private information stored in Countrywide's databases at the time of the Data Security Incident"); *In re Heartland Payment Sys., Inc. Cust. Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1059 (S.D. Tex. 2012) ("Answering the factual and legal questions about Heartland's conduct will assist in reaching classwide resolution.").

[5] *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *see also Cooper v. Southern Co.*, 390 F.3d 695, 714 (11th Cir. 2004) ("Neither the typicality nor the commonality requirement mandates that all putative class members share identical claims, and . . . factual differences among the claims of the putative members do not defeat certification.").

Settlement Class Members' claims, typicality is met. *Hines*, 334 F.3d at 1256.

### d. Adequacy.

RULE 23(a)(4) requires that the class representative "not possess interests which are antagonistic to the interests of the class." 1 NEWBERG ON CLASS ACTIONS § 3:21. Additionally, the class representative's counsel "must be qualified, experienced, and generally able to conduct the litigation." *Id.*; *Amchem*, 521 U.S. at 625–26. At this stage, there is nothing suggesting this requirement is not satisfied. Plaintiff is a member of the Settlement Class and does not possess any interests antagonistic to the Settlement Class. She provided her personal information to APS and allege it was compromised by the Data Security Incident, just like the personal information of the Settlement Class was also allegedly compromised. Indeed, Plaintiff's claims coincide identically with the claims of the Settlement Class, and Plaintiff and the Settlement Class desires the same outcome of this litigation. Because of this, Plaintiff has prosecuted this case for the benefit of all Settlement Class Members.

In addition, proposed Settlement Class Counsel are experienced in class action litigation and have submitted their skills and experience in handling class litigation around the country and in this District. Because Plaintiff and her counsel have devoted substantive time and resources to this litigation, the adequacy requirement is satisfied.

### 2. The Predominance and Superiority Requirements of Are Met.

In addition to meeting RULE 23(a), the proposed Settlement Class must also meet one of the three requirements of RULE 23(b). *Little, supra*, 691 F.3d at 1304. Here, Plaintiff seeks certification under RULE 23(b)(3), which requires that: (1) questions of law and fact common to members of the  class predominate over any questions affecting only individuals; and (2) the class action mechanism is superior to other available methods for the fair and efficient  adjudication of the controversy. RULE 23(b)(3). "'It is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions.'" *BellSouth Telecomms., Inc*., 275 F.R.D. at 644 (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004)). The "inquiry into whether common questions predominate over individual questions is generally focused on whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Agan*, 222 F.R.D. at 700. The Settlement Class readily meets these requirements.

### a. Predominance.

The predominance requirement focuses on whether a defendant's liability is common enough to be resolved on a class basis, *see Dukes*, 131 S. Ct. at 2551–57, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation," *Amchem*, 521 U.S. at 623. Common issues of fact and law

predominate "if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief."[6] Predominance does not require that all questions of law or fact be common, but rather, that a significant aspect of the case "can be resolved for all Settlement Class Members of the class in a single adjudication." *In re Checking*, 275 F.R.D. at 660. "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under RULE 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'"[7]

Common issues readily predominate here because the central liability question in this case—whether APS failed to safeguard Plaintiffs' personal information, like that of every other Class member—can be established through generalized evidence.[8] Several case-dispositive questions could be resolved identically for all members of the Settlement Class, such as whether APS had a duty

---

[6] *BellSouth Telecomms., Inc.*, 275 F.R.D. at 644 (citing *Klay*, 382 F.3d at 1255); *see also Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1179 (11th Cir. 2010) (noting that "[t]he relevant inquiry [is] whether questions of liability to the class . . . predominate over . . . individual issues relating to damages. . . .").

[7] *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 7AA C. Wright, A. Miller, & M. Kane, FEDERAL PRACTICE AND PROCEDURE § 1778, 123–124 (3d ed. 2005)).

[8] *See Klay*, 382 F.3d at 1264 ("When there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position, the predominance test will be met.").

21

to exercise reasonable care in safeguarding, securing, and protecting their personal information and whether APS breached that duty. The many common questions that arise from APS's conduct predominate over individualized issues. Other courts have recognized that common issues arising from a data breach predominate.[9] Because the claims are being certified for settlement purposes, there are no manageability issues.[10]

### b. Superiority.

Finally, a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the proposed Settlement Class. As courts have historically noted, "[t]he class action fills an essential role when the plaintiffs would not have the incentive or resources to prosecute relatively small claims in individual suits, leaving the defendant free from legal accountability." *In re Checking*, 286 F.R.D. at 659. At its most basic, "[t]he inquiry into whether the class action is the superior method for a particular case focuses on 'increased

---

[9] *See, e.g., Countrywide*, 2009 WL 5184352, at *6–7 (finding predominance where proof would focus on data breach defendant's conduct both before and during the theft of class members' information); *Heartland*, 851 F. Supp. 2d at 1059 (finding predominance where "several common questions of law and fact ar[ose] from a central issue: Heartland's conduct before, during, and following the Data Security Incident, and the resulting injury to each class member from that conduct").

[10] *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

efficiency.'"[11] Factors the Court may consider are: (1) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class.

Here, resolution of numerous claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* RULE 23(b)(3). Indeed, absent class treatment, each Settlement Class Member will be required to present the same or essentially the same legal and factual arguments, in separate and duplicative proceedings, the result of which would be a multiplicity of trials conducted at enormous expense to both the judiciary and the litigants. Moreover, there is no indication that Settlement Class Members have an interest or incentive to pursue their claims individually, given the amount of damages likely to be recovered, relative to the resources and expense required to prosecute such an action. Additionally, the Settlement will give the parties the benefit of finality.

## B. Plaintiff's Counsel Should Be Appointed as Settlement Class Counsel.

Under RULE 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." RULE

---

[11] *Agan*, 222 F.R.D. at 700 (quoting *Sikes v. Teleline, Inc*., 281 F.3d 1350, 1359 (11th Cir. 2002)).

23(g)(1)(B). In making this determination, the court must consider the proposed class counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. RULE 23(g)(1)(A)(i)-(iv).

As discussed above, and as fully explained in their Settlement Agreement and Release, proposed Settlement Class Counsel have extensive experience prosecuting similar class actions, as well as other complex litigation, and have the experience to assess the risk of continued litigation and appeals. Proposed Settlement Class Counsel have diligently investigated and prosecuted the claims here, have dedicated substantive resources to the litigation of those claims, and have successfully negotiated the Settlement to the benefit of Plaintiffs and the Settlement Class. *Id*. Accordingly, the Court should appoint D. Anthony Mastando, Eric J. Artrip and Richard P. Rouco as Settlement Class Counsel.

### C. The Settlement Is Fair, Reasonable, and Adequate.

After determining that certification is appropriate for, courts next consider whether the proposed settlement warrants preliminary approval. Under RULE 23(e), the Court should approve a class action settlement if it is fair, reasonable, and adequate.[12]

---

[12] *See Taylor v. Citizens Telecom Servs. Co., LLC*, ----F. Supp. 3d ---- 2022 WL 456448, at *2

Further, it must be noted that there is a strong judicial and public policy favoring the voluntary conciliation and settlement of complex class action litigation.[13] Thus, while district courts have discretion in deciding whether to approve a proposed settlement, deference should be given to the consensual decision of the Parties. *Warren*, 693 F. Supp. at 1054 ("affording great weight to the recommendations of counsel for both parties, given their considerable experience in this type of litigation").

### 1. The Settlement Satisfies Amended RULE 23(e)

RULE 23(e)(1) now provides that notice should be given to the class, and hence, preliminary approval should be granted, where the Court "will likely be able to" (i) finally approve the settlement under Amended RULE 23(e)(2), and (ii) certify the class for settlement purposes. RULE 23(e)(1)(B)(i)–(ii); *see also id.* 2018 Amendment Advisory Committee Notes. As explained above, the Class here meets

---

(M.D. Fla. Feb. 8, 2022) (Honeywell, J.) (finding the "Settlement Agreement, including all Exhibits thereto, [were] entered into in good faith and [thus were] fully and finally approved as fair, reasonable, and adequate as to, and in the best interests of, each of the Parties and the Settlement Class Members").

[13] *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"); *Warren v. City of Tampa*, 693 F. Supp. 1051, 154 (M.D. Fla. 1998), *aff'd*, 893 F. 2d 347 (11th Cir. 1998). Class action settlements ensure class members a benefit, as opposed to the "mere possibility of recovery at some indefinite time in the future." *In re Domestic Air Trans.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993); *see also, e.g.*, *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain).

the criteria for certification of a settlement class, including all aspects of numerosity, commonality, typicality, adequacy, and predominance. RULE 23(e)(1)(B)(ii) is therefore met.

As to RULE 23(e)(1)(B)(i), final approval is proper under the amended RULE upon a finding that the settlement is "fair, reasonable, and adequate" after considering:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under RULE 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other. RULE 23.
>
> (E) Here, the Court will "likely be able to" finally approve this Settlement and thus preliminary approval should be granted.

### a. Adequacy of Representation and Arm's Length Negotiation

As explained above, Plaintiff and proposed Class Counsel has adequately represented the Class. *See supra* § III.A.1.d. Moreover, the Settlement was negotiated at arm's length using experienced mediator Phillip W. McCallum. S.A. ¶

I. E.[14] Subsections (A) and (B) of RULE 23(e)(2) are, therefore, met.

### b.    Adequacy of Relief

The relief offered by the Settlement is adequate considering the risks of continued litigation. Although Plaintiff is confident in the merits of her claims, the risks involved in prosecuting a class action through trial cannot be disregarded.

Pursuant to the Settlement, APS will create a Settlement Fund of $1,375,000.00. Each Settlement Class Member who submits a timely and valid claim form may receive reimbursement of up to $5,000 for out-of-pocket losses, as well as reimbursement of Attested Time up to four (4) hours at twenty dollars ($20) per hour. Given the relief available, proposed Class Counsel believe the results achieved are well within the range of possible approval. S.A. ¶¶ 38-41.

Here, the central legal issues affecting the Settlement Class are challenges to standing as well as attacks on the substantive claims Plaintiff has alleged. Nevertheless, and despite the strength of the Settlement, Plaintiff is pragmatic in her awareness of the various defenses available to APS, as well as the risks inherent to continued litigation. APS consistently denied the allegations and made clear that it would vigorously defend this case through trial as needed.

---

[14] *See also Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1384 (S.D. Fla. 2007) (class settlement not collusive in part because it was overseen by "an experienced and well-respected mediator"); *Lipuma*, 406 F. Supp. 2d at 318-19 (approving settlement where the "benefits conferred upon the Class are substantial, and are the result of informed, arms-length negotiations by experienced Class Counsel").

Settlement relief will be distributed via a straight-forward claims process utilizing an easy-to-understand claim form. S.A. ¶¶ 46–48. Payments for approved claims will be distributed as soon as practicable after allocation and distribution are determined by the Settlement Administrator following the Effective Date. *Id.*

65.    Attorneys' fees, costs, and expenses were negotiated separately, apart, and after reaching agreement on the Class relief. Plaintiff will seek an award of attorneys' fees, costs, and expenses in this action, subject to Court approval. Class Counsel  will request an award of attorneys' fees and reimbursement of litigation costs and expenses not to exceed thirty-three percent (33.3%) of the Settlement Fund, or Four Hundred Fifty-Eight Thousand Three Hundred Thirty-Three Dollars and Thirty-Four Cents ($458,333.34). S.A. ¶ 69. Within ten (10) business days of the later of (i) the Effective Date, (ii) a final order approving Class Counsel's Fee and Expense Award, or (iii) after the time for seeking rehearing, appellate or other review of the Fee and Expense Award, or (iv) Defendant's payment into the Qualified Settlement Fund as contemplated in Paragraph 40, the Settlement Administrator shall pay to MASTANDO & ARTRIP the Court-approved attorneys' fees, costs, and expenses. In the event that the amount of the Fee and Expense Award awarded by the Court is reduced on appeal, the Settlement Administrator shall pay only the reduced amount of the Fee and Expense Award awarded by the Court. The payment of the Fee and  Expense Award awarded by the Court shall be made through

a wired deposit by the Settlement Administrator into the attorney client trust account for MASTANDO & ARTRIP. After the Settlement Administrator has distributed the Fee and Expense Award, Class Counsel shall solely be responsible for allocating the Fee and Expense Award to any counsel that contributed to the prosecution and/or settlement of the Litigation. S.A. ¶ 71

Accordingly, the relief provided by the Settlement is fair, reasonable, and adequate especially when considering the inherent costs, risks, and delay were this matter to proceed. Subsection (C) of RULE 23(e)(2) is therefore met.

**c. The Settlement Treats Class Members Equitably**

The last requirement of the new RULE 23(e) is that the Settlement "treats class members equitably relative to each other." RULE 23(e)(2)(D). Here, the Settlement treats Class Members equitably because all Settlement Class Members are eligible for reimbursement following submission of a claim form.

**1.    The Settlement Satisfies Historic Preliminary Approval Factors**

The historical procedure for review of a proposed class action settlement is a well-established two-step process. 4 NEWBERG ON CLASS ACTIONS, §11.25 at 38–39 (4th ed. 2002). The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." *Id.* "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the

settlement falls within the range of reason." Settlement negotiations involving arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness.[15] Here, there is no question that the proposed Settlement is "within the range of possible approval." As explained above, the process used to reach the Settlement was exceedingly fair and overseen by an experienced neutral. The Settlement is the result of intensive, arm's length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues in this case. Further, the relief provided is significant, especially considering the risks and delay further litigation would entail. Thus, the Settlement is due to be preliminarily approved.

**D. The Proposed Class Notice Satisfies Rule 23.**

"Rule 23(e)(1)(B) requires the court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." Manual for Compl. Litig. § 21.312 (internal quotation marks omitted). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent.*

---

[15] See Manual for Complex Litig. at §30.42. ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." (internal quotation marks omitted).

*Hanover Bank & Trust  Co*., 339 U.S. 306, 314 (1950). To satisfy this standard, "[n]ot only must the substantive  claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt out of the action." *Faught v. American Home Shield Corp.,* 668 F.3d 1233, 1239 (11th Cir. 2011); *Twigg v. Sears, Roebuck & Co*., 153 F.3d 1222, 1227 (11th Cir. 1998) (internal quotation marks omitted).

The Notice program here satisfies all of these criteria and is designed to provide the best notice practicable without the addition of an excess of detail. *Faught*, 668 F.3d at 1239 quoting *In Re Nissan Motor Corp. Antitrust Litigation*, 552 F.2d. 1088, 1104 (5th Cir. 1977). Foremost, the Notice is reasonably calculated to apprise the Settlement Class of the pendency of the case, class certification (for settlement purposes), the terms of the Settlement, Settlement Class Counsel's request for Fee Award and Costs, Settlement Class Members' rights to opt-out of or object to the Settlement, as well as the other information required by RULE 23(c)(2)(B). Additionally, the Notice program is comprised of direct notice sent by U.S. mail for Settlement Class Members whose physical address is available within APS's records and Notice posted to the Settlement Website. S.A. ¶¶ 13, 55.

The form of the Preliminarily Approval Order, Exhibit 2, has been drafted and approved by counsel for the Parties. The proposed claim form, Exhibit A to the

Settlement, likewise satisfies all of the above criteria. Finally, the Settlement Administrator will provide the notification required by CAFA, 28 U.S.C. § 1715, to the Attorneys General of each U.S. State in which Settlement Class Members reside, the Attorney General of the United States, and any other required government officials. S.A. ¶ 50.

Therefore, the Notice and Notice program satisfy all applicable requirements of the law, including RULE 23 and Due Process. The Court should therefore approve the Notice, Notice program, and the form and content of the claim form and Notice.

**E. The Court Should Schedule a Final Approval Hearing.**

The last step in the preliminary approval process is to schedule a Final Approval Hearing, at which the Court will hear evidence and argument necessary to make its final evaluation of the Settlement; whether to enter a Final Approval Order under RULE 23(e); and whether to approve Settlement Class Counsel's request for Fee Award and Costs. Plaintiffs request that the Court schedule the Final Approval Hearing at a date convenient for the Court, at least ninety (90) days after the appropriate government officials are notified pursuant to CAFA. Class Counsel will file the motion for Final Approval no later than thirty (30) days prior to the hearing.

**IV. CONCLUSION**

For the reasons stated, Plaintiff respectfully requests that the Court enter an order: (1) preliminarily approving the proposed settlement; (2) preliminarily

certifying the Settlement Class; (3) appointing Plaintiff as Settlement Class Representative; (4) appointing D. Anthony Mastando, Eric J. Artrip and Richard P. Rouco as Settlement Class Counsel; (5) approving the proposed Notice program and authorizing its dissemination; (6) appointing Angeion as the Settlement Administrator; (7) approving the procedures for exclusions and objection; and (8) setting a schedule for the final approval process.

Respectfully submitted this the 20th day of February 2024.

/s/ Eric J. Artrip
Eric J. Artrip
D. Anthony Mastando
MASTANDO & ARTRIP, LLC
*Attorneys for Plaintiffs & Putative Class*
301 Holmes Ave. NE, Ste. 100
Huntsville, AL 35801
P: (256) 532-2222
F: (256) 513-7489
*tony@mastandoartrip.com*
*artrip@mastandoartrip.com*

/s/  Richard P. Rouco
Richard P. Rouco
QUINN, CONNOR, WEAVER,
DAVIES & ROUCO, LLP
*Attorney for Plaintiffs & Putative Class*
2 – 20th Street North, Ste. 930
Birmingham, AL 35203
Phone: 205-870-9989
Direct: 205-918-7430
*rrouco@qcwdr.com*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of February 2024, a true and correct copy

of the foregoing document has been served upon all counsel of record via CM/ECF.

/s/ *Eric J. Artrip*
Eric J. Artrip