FILED

2024 Oct-25  PM 03:13
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### (Southern Division)

| | |
|---|---|
| **TERESA MADKIN, individually and on behalf of similarly situated individuals,** ) ) ) ) | |
| **PLAINTIFF,** ) | |
| ) | |
| **vs.** ) | **Case No.: 2:21-cv-01177-AMM** |
| ) | |
| **AUTOMATION PERSONNEL SERVICES, INC.** ) ) | **CLASS ACTION** |
| ) | |
| **DEFENDANT.** ) | |

## PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, ATTORNEYS' FEES AND COSTS, AND INCORPORATED MEMORANDUM OF LAW

On July 29, 2024, Plaintiff filed an Amended Unopposed Motion to Direct Class Notice and Grant Preliminary Approval of Class Action. (Doc. 61) (the "Preliminary Approval Motion"). The Court preliminarily approved the Settlement on August 26, 2024, finding "(1) this matter should be finally certified as a class action for settlement purposes pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3), and (e); (2) the Settlement should be finally approved as fair, reasonable, and adequate pursuant to Federal Rule of Civil Procedure 23(e); (3) the action should be dismissed with prejudice pursuant to the terms of the Settlement Agreement; (4) Settlement Class Members should be bound by the releases set forth in the Settlement Agreement; and

1

(5) the application of Settlement Class Counsel and Plaintiff's Counsel for an award of attorneys' fees, costs, and expenses (the "Fee Request") should be approved pursuant to Federal Rule of Civil Procedure 23(h)" (the "Preliminary Approval Order").

Plaintiff now moves for final approval of the Settlement and for certification of the Settlement Class, and request that the Court:

1)   Approve the settlement as fair, reasonable, and adequate under Rule 23(e);

2)   Certify the Settlement Class under Rule 23(b);

3)   Appoint Plaintiff as Settlement Class Representative;

4)   Appoint D. Anthony Mastando, Eric J. Artrip and Richard P. Rouco as Settlement Class Counsel;

5)   Find the Notice program as implemented satisfies Rule 23 and due process;

6)   Appoint Angeion Group ("Angeion") as the Settlement Administrator;

7)   Approving the procedures for exclusions and objection and exclude the opt-outs from the Settlement;

8)   Grant Class Counsel's Motion for Attorneys' Fees and Costs; and

9)   Grant any further relief as the Court deems just and proper.

As set forth in the Notice Compliance Affidavit of Baro Lee on Behalf of Angeion Group, LLC pursuant to 28 U.S.C. § 1715, Angeion implemented an extensive Court-approved Notice Program, established a process for receiving and processing Claim Forms and responding to Class Members' inquiries, and established

a dedicated Settlement Website to maintain, all of which was designed to reach the Class. *See generally*, Notice Compliance Affidavit of Baro Lee on Behalf of Angeion Group, LLC, attached as Exhibit 1 ("Lee Affidavit"). The Postcard Notice was mailed on September 25, 2024 to the 299,253 Class Member records that had mailing address information. *Id.* ¶ 8.

The opt-out and objections deadline is November 25, 2024 and deadline to file a claim is December 24, 2024. [Doc. 63, p. 15.] As of October 24, 2024, the website page has had 18,701 page views and 9,096 individual sessions. *See*, Lee Affidavit, ¶ 12. As of October 24, 2024, only three (3) class members have requested exclusion from the settlement. *Id*.

## INTRODUCTION

On July 26, 2021, Plaintiff filed the Litigation in the Circuit Court for Jefferson County, Alabama against Defendant asserting claims on behalf of herself and all others similarly situated arising out of the Incident. On August 26, 2021, the case was removed to the United States District Court for the Northern District of Alabama, Southern Division. (Doc. 1).

As discussed in details in Plaintiff's Settlement Agreement and Release (Doc. 61-1), the Settlement provides for the creation of a $1,375,000.00 Settlement Fund that will be used to pay for all resolution related sums, including: (i) Settlement Administration and Notice, including all costs to carry out the Notice Program; (ii) all

Taxes and Tax-Related Expenses; (iii) the amount of all Valid Claims, including out-of-pocket losses, lost time and credit monitoring of Settlement Class Members offered by Angeion; and (iv) any Fee and Expenses Award approved for or awarded to Class Counsel. *See* S.A. ¶¶ 38–45. Notably, the Settlement is non-reversionary. S.A. ¶ 26.

The Settlement compares favorably with settlements in similar litigation and was reached only after intensive, arms-length negotiations before a neutral and experienced mediator, Phillip W. McCallum of SCHREIBER ADR. If finally approved, the Settlement will resolve all claims arising out of the Data Security Incident and will provide Class Members with the precise relief this litigation was filed to obtain.

Accordingly, pursuant to Rule 23 of the FEDERAL RULES OF CIVIL PROCEDURE and the Settlement Agreement, Plaintiff respectfully requests that the Court enter an order granting final approval of the settlement and finally certifying the Settlement Class.

## I.    BACKGROUND

### A. Litigation Summary and Information About the Settlement

On September 20, 2023, the Parties participated in a mediation before Phillip W. McCallum of SCHREIBER ADR. Mr. McCallum is a well-known mediator with extensive experience in mediating federal class action lawsuits. Prior to mediation, the parties briefed their respective positions on the facts, claims, defenses, and assessed the risks of litigation and conducted an examination and investigation of the facts and

law relating to the matters set forth in the Complaint and engaged in numerous discussions with Defendant's counsel regarding the claims therein.

On September 20, 2023, the Parties participated in a mediation before Phillip W. McCallum. As outlined immediately above, prior to the mediation, the Parties engaged in discussions and the exchange of information preparing for mediation, including written communications and separate conversations with the mediator. The formal mediation session occurred on September 20, 2023, and lasted more than eight (8) hours. Following the September 20th session, the Parties continued with arm's-length settlement negotiations over the next several weeks and reached an understanding in principle on November 17, 2023. *Id*. The subject of attorneys' fees, costs, and expenses (*i.e.*, the Fee Award and Costs that Plaintiff will seek, subject to Court approval), was negotiated only after all substantive terms of the Settlement were agreed upon by the parties. *Id*.

Based on Plaintiff's Counsel's independent investigation of the relevant facts and applicable law, experience with many other data security cases, including data security cases in this District and before this Court, and the information provided by APS, Plaintiff's Counsel submits that the Settlement is fair, reasonable, adequate, and in the best interest of the Settlement Class. Consequently, the parties worked together to prepare a comprehensive set of settlement documents, which are embodied in the Settlement Agreement and the exhibits attached thereto.

5

## B. The Terms of the Settlement Agreement

### 1. The Settlement Class

The proposed Settlement Class is defined as:

> All persons residing in the United States or its territories whose personally identifiable information was identified as potentially being impacted in the November 2020 data security incident announced by Automation Personnel Services, Inc. in March 2021 (the "Nationwide Class").

### 2. The Settlement Benefits

Under the Settlement, Settlement Class Members are eligible to receive the following benefits:

- Out-of-Pocket Losses. Settlement Class members who claim they suffered reasonable Out-of-Pocket Losses as a result of the Incident shall be entitled to reimbursement in an amount not to exceed a single payment of Five Thousand Dollars and No Cents ($5,000.00), subject to the terms and conditions set forth herein and in the Claim Form ("Out-of-Pocket Loss Claimant"). Payments for Out-of-Pocket Loss claims shall be capped at Five Thousand Dollars and No Cents ($5,000.00) per each eligible Out-of-Pocket Loss Claimant. To be eligible to receive up to, but not exceeding, Five Thousand Dollars and No Cents ($5,000.00) pursuant to this subparagraph, an Out-of-Pocket Loss Claimant must submit a valid and timely Claim Form and Reasonable Documentation supporting the claim for Out-of-Pocket Losses on or before the Claims Deadline and otherwise comply with the terms of the Claim Form. All costs associated with the Out-of-Pocket Loss Claims, including the amounts paid on Valid Claims and administration costs, shall be paid exclusively out of the Settlement Fund.

- Lost Time. Subject to the Lost Time restriction set forth in the immediately following subparagraph, Settlement Class members who claim they suffered Lost Time as a result of the Incident can submit a self-verifying statement under penalty of perjury for Lost Time and be reimbursed for up to four (4) hours at Twenty Dollars per hour ($20/hour), in accordance with the terms and conditions set forth herein and in the Claim Form ("Lost Time Claimant").

- Out-of-Pocket Loss Claimants whose claims meet or exceed the Five Thousand Dollars and No Cents ($5,000.00) cap for Out-of-Pocket Losses are ineligible to seek relief for Lost Time. Moreover, a Settlement Class Member cannot recover an aggregate amount of more than Five Thousand Dollars and No Cents ($5,000.00) for their combined Out-of-Pocket Loss Claim and Lost Time Claim. All costs associated with the Lost Time Claims, including the amounts paid on Valid Claims and administration costs, shall be paid exclusively out of the Settlement Fund.

- Credit Monitoring. Settlement Class members are eligible to receive one year of single-bureau credit monitoring offered by Angeion. S.A. ¶¶ 41-42.

To the extent the total amount of all Valid Claims for Settlement Class Members (including for Out-of-Pocket Losses, Lost Time, and Credit Monitoring) at the end of the Claims Period were to exceed the amount in the Settlement Fund after payment of other expenses from the fund (including payments for all costs of administration of the Settlement and Class Notice, including all costs to carry out the Notice Program; all Taxes and Tax-Related Expenses; and any Fee and Expense Award approved by the Court for or awarded to Class Counsel), the cash benefits to each eligible Settlement Class Member with a Valid Claim would be decreased on a pro rata basis. To the extent the total amount of all Valid Claims for Settlement Class Members (including for Out-of-Pocket Losses, Lost Time, and Credit Monitoring) at the end of the Claims Period were to be less than the amount in the Settlement Fund after payment of other expenses from the fund (including payments for all costs of administration of the Settlement and Class Notice, including all costs to carry out the Notice Program; all Taxes and Tax-

Related Expenses and any Fee and Expense Award approved by the Court for or awarded to Class Counsel), the cash benefits to each eligible Settlement Class Member with a Valid Claim would be increased on a pro rata basis. S.A. ¶¶ 43.

### 3. The Notice Program

On August 26, 2024, the Court preliminarily appointed Angeion to be the Settlement Administrator. (Doc. 63). On September 25, 2024, Angeion commenced the Notice Program. Lee Aff. ¶ 8. The Notice program utilized direct notice disseminated via U.S. mail to all Settlement Class members whose addresses are available within Defendant's records. *Id.* ¶¶ 7-9. On September 25, 2024, Angeion also established a Settlement Website, which included information about the Settlement, related case documents, the Settlement Agreement, important dates, as well as an electronic claim form. S.A. ¶ 27. As of October 24, 2024, there have been 18,701 page views and 9,096 sessions total unique users of the Settlement Website. *See*, Baro Lee, Aff. ¶ 12. Counsel expect this number to increase as the deadline for filing a claim and/or objecting approaches.

### 4. Attorneys' Fees, Costs, and Expenses

APS has agreed that, subject to this Court's approval, Class Counsel may request an award of attorneys' fees not to exceed twenty-five percent (25%) of the Settlement Fund and reimbursement of Litigation Costs and Expenses not to exceed $343,750.00. (Doc. 61, ¶ 5). Notably, the parties did not negotiate this agreement or any other issue

with respect to attorneys' fees, costs, and expenses until after they had reached an agreement on Class relief. Class Counsel have contemporaneously filed their request for attorneys' fees and Litigation Costs and Expenses in the amount of twenty-five percent (25%) of the Settlement Fund and its terms incorporated by reference, as if fully set out herein. Class Counsel have spent 432.70 hours in the litigation of this case, and have incurred $3,451.00 in costs. An hourly rate of $600 appears to be reasonable to other attorneys without a financial interest in this matter. *See* Affidavit of R. Brent Irby, attached hereto as Exhibit 2 (the terms of Mr. Irby's Affidavit are incorporated by reference, as if fully set out herein). Hence, Class Counsel's lodestar would be approximately $230,220.00, which represents a multiplier of 1.48 when compared with the hours expended and expenses incurred.

### 5.  Release of Claims

Under the Settlement, each Settlement Class Member on behalf of himself or herself and on behalf of his or her respective spouses, children, heirs, assigns, beneficiaries, and successors, shall automatically be deemed to have fully and irrevocably released and forever discharged Automation Personnel Services, Inc., which includes its present and former direct and indirect, domestic and foreign parents, subsidiaries, divisions, affiliates, predecessors, successors, and assigns, and for each of them the present and former directors, officers, employees, agents, insurers or reinsurers, shareholders, attorneys, advisors, consultants, data security consultants or

servicers, data security monitors or compliance providers, vendors, representatives, partners, joint venturers, independent contractors, wholesalers, resellers, distributors, retailers, predecessors, successors, and assigns (collectively the "Released Parties"), jointly and severally, of and from any and all liabilities, rights, claims, actions, causes of action, demands, damages, penalties, costs, attorneys' fees, losses, and remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, that result from, arise out of, are based upon, or relate to the Incident that were or could have been alleged in the Litigation, including, without limitation, any claims, actions, causes of action, demands, damages, penalties, losses, or remedies relating to, based upon, resulting from, or arising out of: (i) the exposure, compromise, or disclosure of Settlement Class Members' PII; (ii) Defendant's maintenance, retention, storage, and destruction of Settlement Class Members' PII; (iii) Defendant's information security policies, procedures, and practices or training; and (iv) Defendant's notice of the Incident to Settlement Class Members (the "Released Claims"). [Doc. 61-1, S.A. ¶ 65.]

## II.    ARGUMENT

### A. Final Certification of the Settlement Class is Appropriate

This Court provisionally certified the Settlement Class in its Preliminary Approval Order, finding that the Settlement Class meets the numerosity, commonality, typicality, and adequacy of representation requirements of FED. R. CIV. P. Rules 23(a),

(b)(2), (b)(3), (c), (d) and (e). (Doc. 63). Since the Court's provisional certification and commencing the Notice Program, there have been no developments that would alter this conclusion. Based on the facts and arguments stated herein and for the reasons set forth in Plaintiff's Amended Unopposed Motion to Direct Class Notice and Grant Preliminary Approval of Class Action Settlement (Doc. 61), Plaintiff respectfully submits that the Settlement Class should be finally certified.

### 1. The Proposed Settlement Class Meets the Requirements of Rule 23(a).

### a. Numerosity.

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." RULE 23(a)(1). "While 'mere allegations of numerosity are insufficient,' RULE 23(a)(1) imposes a 'generally low hurdle,' and 'a plaintiff need not show the precise number of members in the class.'" *Manno v. Healthcare Revenue Recovery Grp., LLC,* 289 F.R.D. 674, 684 (S.D. Fla. 2013) (citation omitted). Here, APS identified approximately 299,253 people in the Settlement Class. Thus, numerosity is easily satisfied.

### b. Commonality.

The second prerequisite to certification is commonality, which "requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" and he plaintiff's common contention "must be of such a nature that it is capable of class wide resolution – which means that determination of its truth or falsity will resolve an

issue that is central to the validity of each one of the claims in one stroke." *Wal Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011) (citation omitted). The commonality requirement presents a low hurdle, as it does not require that all questions of law and fact raised be common. *Muzuco v. Re$ubmitIt, LLC*, 297 F.R.D. 504, 514 (S.D. Fla. 2013). "[F]or purposes of RULE 23(a)(2) '[e]ven a single [common] question' will do." Dukes, 131 S. Ct. at 2556. RULE 23(a)(2) requires "only that there be at least one issue whose resolution will affect all or a significant number of the putative class members."[1] Here, commonality is readily satisfied.

The Settlement Class Members are joined by the common questions of law and fact that arise from the same event: the Data Security Incident. *See Manno*, 289 F.R.D. at 685. Specifically, Plaintiff alleged, among others, the following common questions:

    a.    Whether APS had a legal duty to Plaintiff and the Class to exercise due care in collecting, storing, using, and/or safeguarding their PII;

    b.    Whether APS knew or should have known of the susceptibility of its data security systems;

    c.    Whether APS's security procedures and practices to protect its systems were reasonable in light of the measures recommended by data security experts;

    d.    Whether APS's failure to implement adequate data security measures allowed the Data Security Incident to occur;

---

[1] *Sharf v. Fin. Asset Resolution, LLC*, 295 F.R.D. 664, 669 (S.D. Fla. 2014) (cleaned up) (quoting *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009)); *James D. Hinson Elec. Contr. Co. v. BellSouth Telecomms., Inc.*, 275 F.R.D. 638, 642 (M.D. Fla. 2011) (citing *Williams*, 568 F.3d at 1355).

e.    Whether APS failed to comply with its own policies and applicable laws, regulations, and industry standards relating to data security;

f.    Whether APS adequately, promptly, and accurately informed Plaintiff and Class members that their PII had been compromised;

g.    How and when APS actually learned of the Data Security Incident;

h.    Whether APS's conduct, including its failure to act, resulted in or was the proximate cause of the Data Security Incident, resulting in the loss of the PII of Plaintiff and Class Members;

i.    Whether APS adequately addressed and fixed the vulnerabilities which permitted the Data Security Incident to occur;

j.    Whether APS engaged in unfair, unlawful, or deceptive practices by failing to safeguard the PII of Plaintiff and Class Members;

k.    Whether Plaintiff and Class Members are entitled to actual and/or statutory damages and/or whether injunctive, corrective, and/or declaratory relief and/or an accounting is appropriate; and

l.    Whether Plaintiff and Class Members are entitled to restitution as a result of APS's wrongful conduct.

Such issues, focused on APS's conduct, satisfy commonality.[2]

**c. Typicality.**

The next prerequisite to certification, typicality, "measures whether a significant

nexus exists between the claims of the named representative and those of the class at

---

[2] See, e.g., *In re Countrywide Fin. Corp. Cust. Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2009 WL 5184352, at *3 (W.D. Ky. Dec. 22, 2009) ("All class members had their private information stored in Countrywide's databases at the time of the Data Security Incident"); *In re Heartland Payment Sys., Inc. Cust. Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1059 (S.D. Tex. 2012) ("Answering the factual and legal questions about Heartland's conduct will assist in reaching classwide resolution.").

large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003); RULE 23(a)(3). A class representative's claims are typical of the claims of the class if they "arise from the same event or pattern or practice and are based on the same legal theory."[3] Simply put, when the same course of conduct is directed at both the named plaintiff and the members of the proposed class, the typicality requirement is met. *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983).

Here, typicality is satisfied for the same reasons as commonality. Specifically, Plaintiff's claims are typical of those of other Settlement Class Members because they arise from the Data Security Incident. They are also based on the same legal theory, i.e., that APS had a legal duty to protect Plaintiff's and Class Members' personal information. Because there is a "sufficient nexus" between Plaintiffs' and Settlement Class Members' claims, typicality is met. Hines, 334 F.3d at 1256.

**d. Adequacy.**

RULE 23(a)(4) requires that the class representative "not possess interests which are antagonistic to the interests of the class." 1 NEWBERG ON CLASS ACTIONS § 3:21. Additionally, the class representative's counsel "must be qualified, experienced, and generally able to conduct the litigation." *Id.*; *Amchem Products v. Windsor*, 521 U.S. 591, 625–26 (1997). Plaintiff is a member of the Settlement Class and does not

---

[3] *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); see also *Cooper v. Southern Co.*, 390 F.3d 695, 714 (11th Cir. 2004) ("Neither the typicality nor the commonality requirement mandates that all putative class members share identical claims, and . . . factual differences among the claims of the putative members do not defeat certification.").

possess any interests antagonistic to the Settlement Class. She provided her personal information to APS and alleges it was compromised by the Data Security Incident, just like the personal information of the Settlement Class was also allegedly compromised. Indeed, Plaintiff's claims coincide identically with the claims of the Settlement Class, and Plaintiff and the Settlement Class desires the same outcome of this litigation. Because of this, Plaintiff has prosecuted this case for the benefit of all Settlement Class Members.

In addition, proposed Settlement Class Counsel are experienced in class action litigation and have submitted their skills and experience in handling class litigation around the country and in this District. Because Plaintiff and her counsel have devoted substantive time and resources to this litigation, the adequacy requirement is satisfied.

### 2.  The Predominance and Superiority Requirements of Are Met.

Here, Plaintiff seeks certification under RULE 23(b)(3), which requires that: (1) questions of law and fact common to members of the class predominate over any questions affecting only individuals; and (2) the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. RULE 23(b)(3). "'It is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions.'" *BellSouth Telecomms., Inc.*, 275 F.R.D. at 644 (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004)). The "inquiry into whether common

questions predominate over individual questions is generally focused on whether there are common liability issues which may be resolved efficiently on a class-wide basis." *Agan v. Katzman*. 222 F.R.D. 692, 700 (S.D. Fla. 2004) The Settlement Class readily meets these requirements.

### a. Predominance.

The predominance requirement focuses on whether a defendant's liability is common enough to be resolved on a class basis and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation," *Amchem*, 521 U.S. at 623. Common issues of fact and law predominate "if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." [4] Predominance does not require that all questions of law or fact be common, but rather, that a significant aspect of the case "can be resolved for all Settlement Class Members of the class in a single adjudication." *Tornes v. Bank of America, N.A. (In Re Checking Account Overdraft Litig.*), 275 F.R.D. 654, 660 (S.D. Fla. 2011). "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under RULE 23(b)(3) even though other important matters will

---

[4] *BellSouth Telecomms., Inc.*, 275 F.R.D. at 644 (citing Klay, 382 F.3d at 1255); see also *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1179 (11th Cir. 2010) (noting that "[t]he relevant inquiry [is] whether questions of liability to the class . . . predominate over . . . individual issues relating to damages . . .").

have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'"[5]

Common issues readily predominate here because the central liability question in this case—whether APS failed to safeguard Plaintiff's personal information, like that of every other Class member—can be established through generalized evidence.[6] Several case-dispositive questions could be resolved identically for all members of the Settlement Class, such as whether APS had a duty to exercise reasonable care in safeguarding, securing, and protecting their personal information and whether APS breached that duty. The many common questions that arise from APS's conduct predominate over individualized issues. Other courts have recognized that common issues arising from a data breach predominate.[7] Because the claims are being certified for settlement purposes, there are no manageability issues.[8]

---

[5] *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 7AA C. Wright, A. Miller, & M. Kane, FEDERAL PRACTICE AND PROCEDURE § 1778, 123–124 (3d ed. 2005)).

[6] See *Klay*, 382 F.3d at 1264 ("When there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position, the predominance test will be met.").

[7] See, e.g., *Countrywide,* 2009 WL 5184352, at *6–7 (finding predominance where proof would focus on data breach defendant's conduct both before and during the theft of class members' information); *Heartland*, 851 F. Supp. 2d at 1059 (finding predominance where "several common questions of law and fact ar[ose] from a central issue: Heartland's conduct before, during, and following the Data Security Incident, and the resulting injury to each class member from that conduct").

[8] *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

**b. Superiority.**

Finally, a class action is superior to other methods available to fairly, adequately, and efficiently resolve the claims of the proposed Settlement Class. As courts have historically noted, "[t]he class action fills an essential role when the plaintiffs would not have the incentive or resources to prosecute relatively small claims in individual suits, leaving the defendant free from legal accountability." *In re Checking Account Overdraft Litig.*, 286 F.R.D. at 659. At its most basic, "[t]he inquiry into whether the class action is the superior method for a particular case focuses on 'increased efficiency.'"[9] Factors the Court may consider are: (1) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class.

Here, resolution of numerous claims in one action is far superior to individual lawsuits, because it promotes consistency and efficiency of adjudication. *See* FED. R. CIV. P. 23(b)(3). Indeed, absent class treatment, each Settlement Class Member will be required to present the same or essentially the same legal and factual arguments, in

---

[9] *Agan*, 222 F.R.D. at 700 (quoting *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1359 (11th Cir. 2002)).

separate and duplicative proceedings, the result of which would be a multiplicity of trials conducted at enormous expense to both the judiciary and the litigants.

Moreover, there is no indication that Settlement Class Members have an interest or incentive to pursue their claims individually, given the amount of damages likely to be recovered, relative to the resources and expense required to prosecute such an action. Additionally, the Settlement will give the parties the benefit of finality.

Accordingly, the requirements for certification under Rule 23(a) and (b) are met.

**A. Plaintiff's Counsel Should Be Finally Appointed as Class Counsel.**

Under RULE 23, "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." RULE 23(g)(1)(B). In making this determination, the court must consider the proposed class counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. RULE 23(g)(1)(A)(i)-(iv).

As discussed above, and as fully explained in their Settlement Agreement and Release, proposed Settlement Class Counsel have extensive experience prosecuting similar class actions, as well as other complex litigation, and have the experience to assess the risk of continued litigation and appeals. Proposed Settlement Class Counsel have diligently investigated and prosecuted the claims here, have dedicated substantive

resources to the litigation of those claims, and have successfully negotiated the Settlement to the benefit of Plaintiffs and the Settlement Class. *Id.* Accordingly, the Court should appoint D. Anthony Mastando, Eric J. Artrip and Richard P. Rouco as Settlement Class Counsel.

### B. The Settlement Is Fair, Reasonable, and Adequate.

After determining that certification is appropriate for the Settlement Class, courts should next consider whether the proposed settlement warrants final approval. Under RULE 23(e), the Court should approve a class action settlement if it is fair, reasonable, and adequate.[10]

Further, it must be noted that there is a strong judicial and public policy favoring the voluntary conciliation and settlement of complex class action litigation.[11] Thus, while district courts have discretion in deciding whether to approve a proposed settlement, deference should be given to the consensual decision of the Parties. *Warren*,

---

[10] *See Taylor v. Citizens Telecom Servs. Co., LLC*, 2022 WL 456448, at *2 (M.D. Fla. Feb. 8, 2022) (Honeywell, J.) (finding the "Settlement Agreement, including all Exhibits thereto, [were] entered into in good faith and [thus were] fully and finally approved as fair, reasonable, and adequate as to, and in the best interests of, each of the Parties and the Settlement Class Members").

[11] *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) ("Public policy strongly favors the pretrial settlement of class action lawsuits"); *Warren v. City of Tampa*, 693 F. Supp. 1051, 154 (M.D. Fla. 1998), *aff'd,* 893 F. 2d 347 (11th Cir. 1998). Class action settlements ensure class members a benefit, as opposed to the "mere possibility of recovery at some indefinite time in the future." *In re Domestic Air Trans.*, 148 F.R.D. 297, 306 (N.D. Ga. 1993); *see also*, *e.g.*, *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (policy favoring settlement is especially relevant in class actions and other complex matters, where the inherent costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain).

693 F. Supp. at 1054 ("affording great weight to the recommendations of counsel for both parties, given their considerable experience in this type of litigation").

### 1. The Settlement Satisfies Amended RULE 23(e)

As explained above, the Class here meets the criteria for certification of a settlement class, including all aspects of numerosity, commonality, typicality, adequacy, and predominance. If certification of a settlement class is appropriate, a court then determines if the proposal is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). To do so, the Court considers whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

### (A) Class representatives and class counsel have adequately represented the class.

In determining whether class representatives have adequately represented the class, courts considered whether the individual class representatives have a personal interest in the outcome and their involvement in the case. *See*, *In re Pettway*, 2024 U.S. Dist. LEXIS 137136 * 18 (N.D. Ala. Aug. 2, 2024) Ms. Madkin worked for the

defendant APS and had provided her personal information as part of her relationship with APS. When APS experienced a data security incident, she received notice of the breach. Ms. Madkin also alleged that she had suffered economic injuries as a result of the data security incident. Accordingly, she had as an interest in the outcome of this litigation. Additionally, during the mediation with APS, Ms. Madkin was informed and consulted regarding settlement proposals.

In assessing whether class counsel adequately represented the class, courts look to the experience of class counsel. Class Counsel have participated in several data security cases and settlement of such cases. Based on their experience in data security litigation, Class Counsel was able to determine that the proposed settlement fell within the range of settlements other courts have approved in data security litigation.

Accordingly, the Court should find that the Class Representative and Class Counsel have adequately represented the class.

**(B)    The settlement was negotiated at arms-length**.

"Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion." *See Saccoccio v. JP Morgan Chase Bank*, N.A., 297 F.R.D. 683, 692 (S.D. Fla. 2014); *See*, *In re Pettway*, 2024 U.S. Dist. LEXIS 137136 * 18 (N.D. Ala. Aug. 2, 2024). Moreover, when an experienced mediator is involved in fashioning a settlement with the parties, courts have found that such involvement strongly favors a finding that the settlement was negotiated at arms-

length in addition to supporting a finding of adequacy of representation. *See, Cook v. Gov't Emples. Ins. Co*., No. 6:17-cv-891-ORL-40KRS, 2020 U.S. Dist. LEXIS 111956, at *17 (M.D. Fla. June 22, 2020)(noting that settlement was achieved only after extensive and lengthy negotiations with assistance of an experienced and well-respected mediator, which establishes the arm's length nature of the negotiations and is strong evidence of a lack of collusion.)

Here, the Settlement is the result of intensive, arms' length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues in these cases. *See* Exhibit 3, Joint Declaration of Class Counsel In Support of Final Approval of Class Action Settlement, ¶¶ 7-9 (hereinafter "Joint Decl.") The mediation was presided over by Mediator Phillip McCallum of SCHREIBER ADR. Moreover, as discussed at greater length below, the Settlement provides real value to the Class, where continued litigation would provide significant risks.

### (C)    The relief provided to the class is adequate.

As noted above, Rule 23(e)(2)(C) asks the Court to assess whether the relief provided to class is adequate, taking into account enumerated factors. The first factor is the "costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C)(i). This factor overlaps with the first four *Bennett* factors: (1) likelihood of success, (2) range of potential recovery, (3) where, on the range of potential recovery, the amount to which Class Members are entitled falls, and (4) the duration and length of litigation.

*See, e.g.*, *Williams v. New Penn Fin., LLC*, 2019 U.S. Dist. LEXIS 106268, at *11 (M.D. Fla. May 8, 2019).

Settlement Class Members who submit valid claims are eligible to receive up to $5,000 in out-of-pocket expense reimbursements, including payments for lost time and one year of single-bureau credit monitoring. [Doc. 61-1, Settlement ¶¶ 41-43] The value achieved through the Settlement is guaranteed, where chances of prevailing on the merits are uncertain.

While Plaintiff strongly believe in the merits of their case, she also understands that Defendant will assert a number of potentially case-dispositive defenses and that Defendant has limited financial resources. Due at least in part to their cutting-edge nature and the rapidly evolving law, cyber security cases like this one generally face substantial hurdles—even just to make it past the pleading stage. *See Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). As one federal district court recently observed in finally approving a settlement with similar class relief:

> Data breach litigation is evolving; there is no guarantee of the ultimate result. *See Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases ... are particularly risky, expensive, and complex."). *Fox v. Iowa Health Sys.*, No. 3:18-CV-00327-JDP, 2021 WL 826741, at *5 (W.D. Wis. Mar. 4, 2021).

To the extent the law has gradually accepted this relatively new type of litigation, the path to a class-wide monetary judgment remains unforged, particularly in the area of damages. For now, security cases are among the riskiest and uncertain of all class action litigation, making settlement the more prudent course when a reasonable one can be reached. The damages methodologies, while theoretically sound in Plaintiff's view, remain untested in a disputed class certification setting and unproven in front of a jury. And, as in any data security case, establishing causation on a class-wide basis is rife with uncertainty. *See, e.g.*, *In re Hannaford Bros. Co. Cust. Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013).

Early settlement has allowed costs to stay modest, and the Settlement provides for such costs to paid for, separate and apart from the funds available to the class—protracted litigation would only serve to increase costs and have a potentially negative effect on class recovery, which is itself far from certain. Continued litigation would also increase the burden on the court, without any guaranteed benefit to Plaintiff or Class Members. "Complex litigation . . . 'can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive.'" *Woodward v. NOR–AM Chem. Co.*, No. Civ-94-0870, 1996 WL 1063670, at *21 (S.D. Ala. May 23, 1996) (*quoting In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992)). Where a settlement, like here, "will alleviate the need for judicial exploration of . . . complex subjects [and[ reduce litigation costs"

this factor weighs in favor of approval. *See Lipuma v. American Express*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005).

While Plaintiff is confident in the strength of their claims, they are also pragmatic in their awareness of the various defenses available to Defendant, as well as the risks inherent to continued litigation including the limited financial resources of the Defendant. Defendant has consistently denied the allegations raised by and made clear at the outset that they would vigorously defend the case. Through the Settlement, Plaintiff and Class Members gain significant benefits without having to face further risk of not receiving any relief at all.

The second factor is the method for "distributing relief" and "processing class-members claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). The process for distributing relief is straight-forward. Though the settlement provides for relief on a claims made basis, courts in this Circuit have found such process to be fair and adequate. *Bastian v. United Servs. Auto. Ass'n*, 2017 U.S. Dist. LEXIS 180757 (M.D. Fla. Nov. 1, 2017) (approving similar claims-made settlement in class action concerning total-loss vehicles); *Poertner v. Gillette Co* , 618 Fed. Appx. 624 (11th Cir. 2015) (confirming approval of class settlement with 7.26 million class members and 55, 346 claims which equates to less than 1% claims rate); *Hamilton v. SunTrust Mortg. Inc*., 2014 WL 5419507, at *6 (S.D. Fla. Oct. 24, 2014) (a claims made structure does not impact the "fairness, reasonableness, or adequacy of proposed settlement."); *Montoya v. PNC Bank, N.A.*,

2016 U.S. Dist. LEXIS 50315, 2016 WL 1529902 (S.D. Fla. Apr. 13, 2016*); Braynen v. Nationstar Mortg*., LLC, 2015 WL 6872519 (S.D. Fla. Nov. 9, 2015); *Hall v. Bank of Am., N.A*., 2014 U.S. Dist. LEXIS 177155, 2014 WL 7184039 (S.D. Fla. Dec. 17, 2014).

The Court in *Cook v. Gov't Emples. Ins. Co*. 2020 U.S. Dist. LEXIS 111956, at *23-24 (M.D. Fla. June 22, 2020) noted and agreed that "[n]egotiating for a smaller amount to go to Class Members would, in effect, unfairly reward some Class Members for their own indifference at the expense of those who would take the minimal step of returning the simple Claim Form to receive the larger amount." *Lee v. Ocwen Loan Servicing, LLC*, 2015 U.S. Dist. LEXIS 121998, 2015 WL 5449813, at *18 (S.D. Fla. Sep. 14, 2015); *see also, e.g., In re Cendant Corp. Litig*., 264 F.3d 201, 250-51 (3d Cir. 2001) (explaining why a defendant can offer a higher percentage recovery in a claims made class settlement).

In this settlement, Settlement Class Members can receive up to $5,000 in out-of-pocket expense reimbursements, including payments for lost time and one year of single-bureau credit monitoring and will gain the benefit of APS's security enhancements. Each individual Settlement Class Member is eligible to receive up to $5,000 in expense and time reimbursements—including up to $20 an hour for up to four (4) hours for lost time simply by attesting that the time was spent mitigating the effects of the Data security incident. The available out-pocket payments (coupled with

the 4 hours of lost time on the basis on simply submitting a form) and one full year of credit monitoring provide substantial relief in a data security breach case where establishing injury can be difficult. Accordingly, the Settlement is eminently reasonable, especially considering that it avoids the potential contingencies of continued litigation.

This settlement relief is substantially more than would have been available had the settlement amount been distributed on a pro-rata basis to all class members. Moreover, the defendant was not willing to pay amounts in excess of the amount settle upon. Thus, a direct pay distribution was not a feasible option in this case and the decision to settle on claims made basis was the most feasible option available. *See Montoya v. PNC Bank, N.A.*, 2016 U.S. Dist. LEXIS 50315, at *49 (S.D. Fla. Apr. 13, 2016) (claims made settlement offered the best and "only real relief" possible in settlement because defendants "would not have agreed" to direct pay structure); *Casey v. Citibank, N.A.*, 2014 U.S. Dist. LEXIS 118252, 2014 WL 4120599, at *2 (N.D. N.Y. Aug. 21, 2014) (while direct payment may have resulted in more class members receiving some payment, "there is no reason to believe the defendants would agree to such terms" and thus the feasibility of direct payment "is irrelevant") (*citing Uhl v. Thoroughbred Tech. & Telecomms., Inc*., 309 F.3d 978, 986 (7th Cir. 2002) (because the inquiry into a proposed settlement structure "is limited to whether the settlement is

lawful, fair, reasonable and adequate[,] . . . [an objector] must do more than just argue that she would have preferred a different settlement structure")).

The third factor is the "terms of any proposed award of attorney's fees[.]" Fed. R. Civ. P. 23(e)(2)(C)(iii). This is distinct from the Rule 23(h) analysis below, and instead addresses if and how the attorneys' fees impacted the terms of the Settlement. The settlement provided for a percentage of the common fund to be paid as attorneys fees and costs. The attorney's fees and the terms of the settlement were negotiated separately, *See*, Joint Decl., ¶ 8. But more importantly, the relief provided to the class is not dependent on the payment of a certain amount in fees and costs. *Id.* ¶ 8. Courts have found that such terms of a proposed attorney fee award are fair and adequate. *See*, *Williams v. New Penn Fin.,* LLC, No. 3:17-cv-570-J-25JRK, 2019 U.S. Dist. LEXIS 106268, at *16 (M.D. Fla. May 8, 2019)(Class Member relief is not conditioned on attorneys' fees being awarded by the Court, which further supports the adequacy and fairness of the Settlement.)

The fourth matter to consider under Rule 23(e)(2)(C) is whether there is any agreement required to be identified under Rule 23(e). The proposed Settlement Agreement sets forth all the terms of the settlement. There are no separate agreements made in connection with the Settlement proposal.

**(D)    The Settlement Agreement treats class members equitably vis-à-vis e
each other.**

The final factor is whether the Agreement treats class members equitably vis-a-vis each other. Fed. R. Civ. P. 23(e)(2)(D). Under the Settlement Agreement, Settlement Class Members are treated identically insofar as it relates to Notice, Claim Forms, damages, and all other material ways. Additionally, the scope of the release is identical as to all Class Members. See Rule 23(e)(2)(D), Committee Notes on Rules - 2018 Amendment (instructing courts evaluating Rule 23(e)(2)(D) to consider the extent to which "the scope of the release may affect class members in different ways"). Thus, this Court finds that Rule 23(e)(2)(C)(iv) favors approval of the settlement.

### 2. Remaining Bennett factors Support Granting Final Approval

Finally, the two remaining Bennett factors not subsumed within Rule 23 (i.e. opposition to the settlement and the opinions of the Class Representatives and Class Counsel) also favor settlement. First, only three class members out of approximately 300,000 opted out of the settlement agreement. It is still too early to assess whether the settlement will have opposition because the deadline to object has not yet expired. However, as of this date, there are no objections to the proposed settlement and such lack of opposition is significant evidence that the settlement terms are fair, adequate, and reasonable. *Morgan v. Public Storage*, 301 F. Supp. 3d 1237, 1252 (S.D. Fla. 2016) (one objection out of "hundreds of thousands class members" indicates strong satisfaction with settlement).

Second, class counsel support the settlement agreement because in their opinion the relief provided under the Settlement is fair and adequate when weighed against the uncertainty and risk that continued litigation would present to class members. Joint Decl. ¶ 12. The Court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren* 693 F. Supp. at 1060; *see also In re Domestic Air Transp. Antitrust Litig.,* 148 F.R.D. 297, 312–13 (N.D. Ga. 1993) ("In determining whether to approve a proposed settlement, the Court is entitled to rely upon the judgment of the parties' experienced counsel. '[T]he trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'") (citations omitted). As one district court stated:

> This Court, like others, considers the reaction of the class, as well as the reaction of the various state attorney generals and regulators, to the proposed settlement to be an important indicator as to its reasonableness and fairness. Obviously, a low number of objections suggests that the settlement is reasonable, while a high number of objections would provide a basis for finding that the settlement was unreasonable.

*Howard Braynen, et al. v. Nationstar Mortgage, LLC, et al.*, 2015 WL 6872519 (S.D. Fla. 2015) (internal citations and quotation marks omitted).

Here, Class Counsel have substantial experience prosecuting consumer class actions. [*See*, Doc. 63] After independent fact investigation, briefing Defendant's Motion to Dismiss, and mediation before a well-qualified and experienced mediator,

Class Counsel are confident that the Settlement provides significant relief to the Class, and is in the best interests of the Class. *See* Joint Decl. ¶ 19. Class Counsel share the opinion that the Settlement is fair and reasonable. *Id*. ¶ 20.

Additionally, the reaction of the Settlement Class so far has been positive. First, on March 1, 2024, notice under 28 U.S.C. § 1715(b) ("CAFA Notice") to the Attorney Generals of all the states and territories. To date, no Attorney General has raised an objection with the proposed settlement. Second, the deadline for Class Members to opt-out or file an objection to the Settlement is November 25, 2024. As of October 22 2024, there are no objections and only 3 opt-outs. *See*, Declaration of Baro Lee, ¶ 13. These are indicia that the Settlement is fair, reasonable, and adequate and deserves final approval. *See Hall v. Bank of America, N.A.*, 2014 WL 7184039, at *5 (S.D. Fla. Dec. 17, 2014) (where objections from settlement class members "equates to less than .0016% of the class" and "not a single state attorney general or regulator submitted an objection," "such facts are overwhelming support for the settlement and evidence of its reasonableness and fairness"); *Hamilton v. SunTrust Mortg. Inc.*, 2014 WL 5419507, at *4 (S.D. Fla. Oct. 24, 2014) (where "not a single state attorney general or regulator submitted an objection," and there were few objections to the class settlement, "such facts are overwhelming support for the settlement").

## IV. CONCLUSION

Plaintiff respectfully requests that the Court finally approve the Class Settlement, finally certifying the Settlement Class, finally appointing Plaintiff as Class

Representative, finally appointing as Class Counsel as D. Anthony Mastando, Eric J. Artrip and Richard P. Rouco, finding the Notice Program as implemented satisfies RULE 23 and Due Process, finally appointing Angeion as the Settlement Administrator, granting Class Counsel's attorneys' fees and litigation costs and expenses of $343,750.00, excluding the 3 opt-outs identified by Angeion, and dismissing the action with prejudice.

### Local Rule 3.01(g) Certification

In accord with Local Rule 3.01(g), Plaintiff conferred with Defendant regarding the relief requested in this motion and Defendant does not object to the relief sought herein but only in connection with the proposed settlement of this case.

Submitted this 25th day of October 2024.

/s/ Eric J. Artrip
D. Anthony Mastando
Eric J. Artrip
MASTANDO & ARTRIP, LLC
*Attorney for Plaintiff & Putative Class*
301 Holmes Ave. NE, Ste. 100
Huntsville, AL 35801
P: (256) 532-2222
F: (256) 513-7489 *tony@mastandoartrip.com*
*artrip@mastandoartrip.com*

/s/ Richard P. Rouco

Richard P. Rouco
QUINN, CONNOR, WEAVER,
DAVIES & ROUCO, LLP
*Attorney for Plaintiffs & Putative Class*
2 – 20th Street North, Ste. 930
Birmingham, AL 35203
Phone: 205-870-9989
Direct: 205-918-7430
*rrouco@qcwdr.com*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of October 2024, a true and correct copy of the foregoing document has been served upon all counsel of record via CM/ECF.

*/s/ Eric J. Artrip*
Eric J. Artrip