FILED
2024 Oct-25  PM 06:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### (Southern Division)

| | |
|---|---|
| **TERESA MADKIN, individually and on behalf of similarly situated individuals,** | ) ) ) ) |
| **PLAINTIFF,** | ) ) |
| **vs.** | ) **Case No.: 2:21-cv-01177-AMM** |
| | ) |
| **AUTOMATION PERSONNEL SERVICES, INC.** | ) **CLASS ACTION** ) ) |
| **DEFENDANT.** | ) ) |

## PLAINTIFF'S UNOPPOSED MOTION FOR
## FEE AWARD AND LITIGATION COSTS

Plaintiff, Teresa Madkin ("Plaintiff" or the "Settlement Class Representative"), respectfully moves for approval of her request for attorneys' fees of twenty five percent (25%) of the $1,375,000.00 Settlement Fund, totaling Three Hundred Forty-Three Thousand Seven Hundred Fifty Dollars ($343,750.00) (collectively, the "Fee and Expense Award") in this preliminarily approved class action settlement with Defendant, Automated Personnel Services, Inc. ("Defendant" or "APS").

## I.      INTRODUCTION

In March of 2021, Ms. Madkin received notice from APS that her personally identifiable information (PPI) may have been compromised in a data security incident that occurred in November 2020.

1

On July 26, 2021, Plaintiff filed the in the Circuit Court for Jefferson County, Alabama against Defendant asserting claims on behalf of herself and all others similarly situated arising out of a data security incident. On August 26, 2021, the case was removed to the United States District Court for the Northern District of Alabama, Southern Division. (Doc. 1). Ms. Madkin's case was then consolidated with *Hayes v. Automated Personnel Services*, 21-cv-00859-AMM. After several rounds of briefing on motions to dismiss, the Court dismissed the *Hayes* case in its entirety [Doc. 37] and on April 17, 2023 denied in part and granted in part the motion to dismiss Ms. Madkin's claims against APS. (Doc. 43) The Court then entered a scheduling order on June 5, 2023 setting forth deadlines. (Doc. 47)

On February 20, 2024, the Plaintiff filed a motion to Direct Class Notice and Grant Preliminary Approval of Class Action Settlement. (Doc. 50) On July 29, 2024, Plaintiff filed an Amended Unopposed Motion to Direct Class Notice and Grant Preliminary Approval of Class Action. (Doc. 61) (the "Preliminary Approval Motion"). The Court preliminarily approved the Settlement on August 26, 2024, finding "(1) this matter should be finally certified as a class action for settlement purposes pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3), and (e); (2) the Settlement should be finally approved as fair, reasonable, and adequate pursuant to Federal Rule of Civil Procedure 23(e); (3) the action should be dismissed with prejudice pursuant to the terms of the Settlement Agreement; (4) Settlement Class

Members should be bound by the releases set forth in the Settlement Agreement; and (5) the application of Settlement Class Counsel and Plaintiff's Counsel for an award of attorneys' fees, costs, and expenses (the "Fee Request") should be approved pursuant to FEDERAL RULE OF CIVIL PROCEDURE 23(h)" (the "Preliminary Approval Order").

As discussed in details in Plaintiff's Settlement Agreement and Release (Doc. 61-1), the Settlement provides for the creation of a $1,375,000.00 Settlement Fund that will be used to pay for all resolution related sums, including: (i) Settlement Administration and Notice, including all costs to carry out the Notice Program; (ii) all Taxes and Tax-Related Expenses; (iii) the amount of all Valid Claims, including out-of-pocket losses, lost time and credit monitoring of Settlement Class Members offered by Angeion; and (iv) any Fee and Expenses Award approved for or awarded to Class Counsel. (*See* Doc. 61-1, S.A. ¶¶ 38–45) Notably, the Settlement Fund is non-reversionary and will not be repaid to the Defendant. (Doc. 61-1, S.A. ¶ 47)

The Settlement compares favorably with settlements in similar litigation and was reached only after intensive, arms-length negotiations before a neutral and experienced mediator, Phillip W. McCallum, Esq. If finally approved, the Settlement will resolve all claims arising out of the Data Security Incident and will provide Class Members with the precise relief this litigation was filed to obtain.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide that "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties agreement." Fed. R. Civ. P. 23(h). "It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to an allowance of attorneys' fees based upon the benefit obtained." *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d at 1358 (citing *Camden I Condominium Ass'n v. Dunkle*, 946 F.2d 768, 771 (11th Cir.1991); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). Plaintiff is requesting attorneys' fees and reimbursement of Litigation Costs and Expenses not to exceed $343,750.00. (Doc. 61-1, ¶ 69). This amount represents approximately twenty-five (25) percent of the Settlement Fund and is a reasonable fee. The Panel in *Nelson v. Mead Johnson & Johnson*, 484 Fed. Appx. 429, 435 (11th Cir. 2012) noted that "well-settled law from this court [states] that 25% is generally recognized as a reasonable fee award in common fund cases." *Faught v. Am. Home Shield Corp*., 668 F.3d 1233, 1243 (11th Cir. 2011); *see, Arkin v. Smith Med. Partners, LLC*, 2021 U.S. Dist. LEXIS 63844, at *12 (M.D. Fla. Apr. 1, 2021)("Twenty-five percent has been described as the "benchmark" attorneys' fee award in such cases [i.e. common fund]")(brackets added).

## III. ARGUMENT

Pursuant to the Settlement Agreement and the Unopposed Declaration of Class Counsel in Support of Preliminary Approval of Class Action Settlement (*see* Docs. 61, 62), and consistent with recognized class action practice and procedure in this District, Plaintiff respectfully requests an attorneys' fee award of $343,750.00 or twenty-five percent (25%) of the $1,375,000.00 Settlement Fund created by the Settlement. SA ¶ 69; *see generally*, Joint Declaration of Class Counsel in Support of Final Approval of Class Action Settlement, filed concurrently herewith ("Joint Decl."). Plaintiff and Defendant negotiated and reached agreement regarding attorneys' fees, costs, and expenses only after reaching agreement on all other material Settlement terms. (Joint Decl., ¶ 8). The experience and reputations of Class Counsel secured solid relief to Settlement Class Members now without the uncertainty and risk inherent in this ever-developing field.

The requested fee is within the range of reason under the factors listed in *Camden I Condo. Ass'n. v. Dunkle*, 946 F.2d 768 (11th Cir. 1991). For the reasons detailed herein, Plaintiff submits that the requested fee is appropriate, fair, and reasonable, and respectfully requests that it be approved by the Court.

### A. The Law Awards Class Counsel Fees Based Upon the Fund Established for the Benefit of the Class.

It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to attorneys' fees based upon the benefit

obtained. *Camden I*, 946 F.2d at 771; *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). The doctrine serves the "twin goals of removing a potential financial obstacle to a plaintiff's pursuit of a claim on behalf of a class and of equitably distributing the fees and costs of successful litigation among all who gained from the named plaintiff's efforts." *In re Gould Sec. Litig.*, 727 F. Supp. 1201, 1202 (N.D. Ill. 1989) (citation omitted). The common benefit doctrine stems from the premise that those who receive the benefit of a lawsuit without contributing to its costs are "unjustly enriched" at the expense of the successful litigant. *Van Gemert*, 444 U.S. at 478. As a result, the Supreme Court, the Eleventh Circuit, and district courts in this Circuit have all recognized that "[a] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as whole." *In re Sunbeam Sec's. Litig.*, 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001). In the Eleventh Circuit, and as courts in this District have ruled, class counsel are awarded a percentage of the funds made available through a settlement. *See, e.g.*, *Stoll et al. v. Musculoskeletal Institute, Chartered d/b/a Florida Orthopaedic Institute*, No. 8:20-cv-01798-CEH-AAS (M.D. Fla. Nov. 14, 2022), Doc. 115 (finding as reasonable attorneys' fees equaling 1/3 of common fund and separately awarding litigation costs); *Hanley v. Tampa Bay Sports & Entm't Ltd. Liab. Co.*, No. 8:19-cv-00550-CEH-CPT, 2020 WL 2517766, at *5 (M.D. Fla. Apr. 23, 2020) (noting that the percentage of the fund analysis applies to claims made settlements and that the "percentage applies to the total fund created, even where the actual payout following

6

the claims process is lower") (quoting *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007)); *see also Marty v. Anheuser-Busch Cos., LLC*, No. 13-cv-23656-JJO, 2015 WL 6391185 (S.D. Fla. Oct. 22, 2015) (same); *Montoya v. PNC Bank*, N.A., No. 14-20474, 2016 WL 1529902, *23 (S.D. Fla. Apr. 14, 2016) ("the valuation of counsel's fee should be based on the opportunity created for the Settlement Class … [a]nd counsel should not be penalized for class members' failure to take advantage of such a settlement").

In *Camden I*—the controlling authority regarding attorneys' fees—the Eleventh Circuit held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this Circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774; *see also, Hamilton v. SunTrust Mortg. Inc.*, 2014 WL 5419507 (S.D. Fla. Oct. 24, 2014) (finding that attorneys representing a class action are entitled to an attorneys' fee based solely upon the total benefits obtained in or provided by a class settlement); *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 695 (S.D. Fla. 2014) (noting that in a claims made situation, the attorneys' fees in a class action are determined based upon the total fund, not just the actual payout to the class); *Carter v. Forjas*, 701 F. App'x 759, 766-67 (11th Cir. 2017) (same).

The Court has discretion in determining the appropriate fee percentage. "There

is no hard and fast rule mandating a certain percentage of a common fund which may be awarded as a fee because the amount of any fee must be determined upon the facts of each case." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 774). But as referenced above, in this Circuit twenty-five (25) percent of a common fund is viewed as the "benchmark."

The Eleventh Circuit has provided a set of factors the Court should use to determine a reasonable percentage to award as an attorney's fee to class counsel in class actions: (1) the time and labor required; (2) the novelty and difficulty of the relevant questions; (3) the skill required to properly carry out the legal services; (4) the preclusion of other employment by the attorney as a result of his acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the clients or the circumstances; (8) the results obtained, including the amount recovered for the Clients; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the clients; (12) fee awards in similar cases. *Camden I*, 946 F.2d at 772 n.3 (citing factors originally set forth in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714, 717-19 (5th Cir. 1974)).

These factors are guidelines and are not exclusive. "Other pertinent factors are the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, any non-monetary benefits conferred upon the class by the settlement, and

the economics involved in prosecuting a class action." *Sunbeam*, 176 F. Supp. 2d at 1333 (quoting *Camden I*, 946 F.2d at 775). The Eleventh Circuit has "encouraged the lower courts to consider additional factors unique to the particular case." *Camden I*, 946 F.2d at 775. The *Camden I* factors support the requested fee.

### 1. The Claims Against Defendant Required Substantial Time and Labor.

Prosecuting and settling these claims demanded considerable time and resources. (Joint Decl., ¶ 5). Class Counsel devoted substantial time to investigating the claims against Defendant. *Id*. Class Counsel also expended resources researching and developing the legal claims at issue. *Id.* Substantial time and resources were dedicated to developing, serving, and reviewing Defendant's jurisdictional discovery responses, implementing extensive research and discovery regarding the jurisdictional discovery, including some details about the Data Security Incident. *See generally, id*. Additionally, Class Counsel fully briefed Defendant's motion to dismiss, which Class Counsel were able to review, assess, and respond to with the benefit of their extensive experience in the data privacy and data breach practice areas in this District and nationwide. *Id.* at ¶ 16. The mediation session held before Phillip W. McCallum required substantial preparation and review of Defendant's jurisdictional discovery and the parties' pre mediation submissions to Mr. McCallum. (Joint Decl., ¶ 7). Significant time was devoted to negotiating and drafting the Settlement Agreement, the preliminary approval process, and to all

actions required thereafter pursuant to the preliminary approval order. *See generally, Id.* Class Counsel should be amply compensated for the substantial time and labor invested to obtain this outstanding settlement on behalf of the Class. *Id.* ¶ 19.

### 2. The Novelty and Difficulty of the Questions Involved in this Litigation Required the Skill of Highly Talented Attorneys.

"[P]rosecution and management of a complex national class action requires unique legal skills and abilities." *Edmonds v. U.S.*, 658 F. Supp. 1126, 1137 (D.S.C. 1987). This is particularly true for data breach litigation. *See e.g.*, *In re Sonic Corp. Customer Data Sec. Breach Litig.*, 2019 WL 3773737, at *7 (N.D. Ohio Aug. 12, 2019) ("The realm of data breach litigation is complex and largely undeveloped."); *Fulton Green v. Accolade, Inc.*, 2019 WL 4677954, at *21 (E.D. Pa. Sep. 24, 2019) ("This is a complex case in a risky field of litigation because data breach class actions are uncertain and class certification is rare."). The Court in *In re TD Ameritrade Account Holder Litigation* noted that "many [data breach class actions] have been dismissed at the pleading stage." 2011 WL 4079226, at *14 (N.D. Cal. Sep. 13, 2011).

The caliber of lawyers representing the parties, and particularly Class Counsel's representation of the interests of the class, supports this application for attorneys' fees and litigation costs. *Walco Inv., Inc. v. Thenen*, 975 F. Supp. 1468, 1472 (S.D. Fla. 1997) (explaining that "[g]iven the quality of defense counsel from prominent national law firms, the Court is not confident that attorneys of lesser

aptitude could have achieved similar results"); *see also Camden I*, 946 F.2d at 772 n.3 (in assessing the quality of representation by Class Counsel, the court should also consider the quality of their opposing counsel); *see also Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992) (same). "[T]hat this level of legal talent was available to the Settlement Class is another compelling reason in support of the fee requested . . . . In the private marketplace, as pointed out by several of Plaintiffs' experts, counsel of exceptional skill commands a significant premium." *In re Checking*, 830 F. Supp. 2d at 1363.

Here, Class Counsel have a solid and well-earned reputation in the area of complex litigation, and in particular privacy and data breach class action litigation. *See* Doc. 61 (preliminary approval motion detailing Class Counsel's experience supporting same)[1] Class Counsel have successfully litigated and settled similar cases across the country and, in this case, have been challenged by highly experienced and skilled counsel who deployed very substantial resources on Defendant's behalf. Indeed, Class Counsel understand and appreciate the risks of pursuing matters beyond the pleading stage. Class Counsel's experience there (and myriad cases that have proceeded to and beyond class certification), as well as the collective experience of Class Counsel on the whole, allowed Class Counsel to assess the risks inherent in a somewhat new area of litigation against securing benefits for the class

---

[1] For example, Mr. Rouco played a substantial role in the *TJX Cos. Retail Security Breach Litig*. 527 F. Supp. 2d 209 (D. Mass. 2007) an early data security breach case that tackled many issues of first impression.

now.

### 3.  Class Counsel Achieved a Successful Result.

Given the litigation risks Class Counsel faced, the Settlement represents a successful result. Rather than facing years of costly and uncertain litigation, each Settlement Class Member (approximately 299,253 individual people) is eligible to receive: (i) Settlement Administration and Notice, including all costs to carry out the Notice Program; (ii) all Taxes and Tax-Related Expenses; (iii) the amount of all Valid Claims, including out-of-pocket losses, lost time and credit monitoring of Settlement Class Members offered by Angeion; and (iv) any Fee and Expenses Award approved for or awarded to Class Counsel. *See* S.A. ¶¶ 38–45. Notably, the Settlement is non-reversionary. SA ¶ 40.

With regard to the monetary benefits provided to Settlement Class Members alone, this settlement compares favorably to other data breach class action settlements. *See e.g.*, *In re Ambry Genetics Data Breach Litig.*, No. SACV 20-00791-CJC (KESx) (C.D. Cal. March 6, 2023) (finally approving healthcare data breach with credit monitoring and $10,000 aggregate cap); *Stoll*, No. 8:20-cv-01798 (M.D. Fla. July 5, 2022) (finally approving healthcare data breach with credit monitoring, $15,000 aggregate cap); *Pfeiffer v. RadNet, Inc.*, No. 2:20-cv-09553 (RGK)(SK) (C.D. Cal. Feb. 22, 2022) (Doc. 70) (finally approving healthcare data breach with additional credit monitoring and $15,000 aggregate cap); *Hashemi v. Bosley, Inc.*, 2022 WL 2155117,

at *6 (C.D. Cal. Feb. 22, 2022) (approving data breach settlement where estimated payments to class members ranged between $15 to $275 because that value "greatly exceed[ed] the settlement value per class member in comparable data breach cases" and collecting cases with estimated settlement values of fewer than $1 per class member); *In re: 21st Century Oncology Cust. Data Sec. Breach Litig.*, No. 8:16-md-2737-MSS-AEP (M.D. Fla. June 25, 2021) (Doc. 269) (finally approving healthcare data breach with two years of credit monitoring and $10,000 aggregate cap); *Kuss v. American HomePatient, Inc.*, No. 8:18-cv-02348-EAK-TGW (M.D. Fla. Aug. 13, 2020)(Doc. 70) (finally approving healthcare data breach with $1,400 aggregate cap); *Parsons v. Kimpton Hotel & Restaurant Group, LLC,* No. 3:16-cv-05387-VC (N.D. Cal. July 11, 2019) (finally approving claims made settlement that would reimburse up to $250 per claim including, *inter alia*, expenses for lost time and out-of-pocket expenses, as well as up to $10,000 per claim for extraordinary expenses).[2]

### 4. The Claims Entailed Serious Risk.

Given the context of this case—a data breach class action—the risks incurred in pursuing it were significant. "The simple fact is that there were a larger than usual

---

[2] *See also, In re Heartland Payment Sys., Inc. Customer Data Security Breach Litig.*, 851 F. Supp. 2d 1040, 1048 1069 (S.D. Tex. 2012) (approving settlement that provided up to $2.4 million to pay for out-of-pocket losses); *In re Countrywide Financial Corp. Customer Data Security Breach Litig.*, No. 3:08-MD 01998, 2009 WL 5184352, at *1-4 (W.D. Ky. Dec. 22, 2009) (approving settlement that provided up to $1.5 million to pay out-of-pocket costs, up to $5 million to pay identity theft losses, and 2 years of free credit monitoring services).

number of ways that Plaintiffs could have lost this case, and they still managed to achieve a successful settlement. A significant amount of the credit for this must be given to Class Counsel's strategy choices, effort and legal acumen." *In re Checking*, 830 F. Supp. 2d at 1364. "A court's consideration of this factor recognizes that counsel should be rewarded for taking on a case from which other law firms shrunk." *In re Sunbeam*, 176 F. Supp. 2d at 1336. Further, "[t]he point at which plaintiffs settle with defendants . . . is simply not relevant to determining the risks incurred by their counsel in agreeing to represent them." *Skelton v. General Motors Corp.*, 860 F.2d 250, 258 (7th Cir. 1988).

The Settlement is particularly noteworthy given the combined litigation risks. Defendant would likely raise substantial and potentially meritorious defenses. Indeed, prosecuting this matter was risky from the outset. *See, e.g., In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, 2010 WL 3341200, at *6 (W.D. Ky. Aug. 23, 2010) (approving data breach settlement, in part, because "proceeding through the litigation process in this case is unlikely to produce the plaintiffs' desired results"). Few cases in this area have gone through the certification stage, and none have yet been tried.

Even still, where cases proceed to class certification, some trial courts have granted injunctive relief but declined to grant monetary relief. *See, e.g.*, *Brown v. Google LLC*, No. 4:20-cv-03664-YGR (N.D. Cal. Dec. 12, 2022) (granting certification of Rule 23(b)(2) injunctive classes, but denying certification of Rule

23(b)(3) monetary classes due to individualized issues, subsequent settlement pending); *Adkins v. Facebook, Inc.*, No. 3:18-cv-05982-WHA (N.D. Cal. May 6, 2021) (finally approving data breach settlement where monetary relief was not certified at class certification stage but injunctive relief was certified and parties were proceeding to trial on the merits); *In re Google LLC Street View Elec. Comm's. Litig.*, 2020 WL 1288377, at *16 (N.D. Cal. Mar. 18, 2020) (granting final approval of settlement providing injunctive relief and creating a non-distributable *cy pres* settlement fund in litigation alleging that Google violated privacy by illegally gathering WiFi network data); *Campbell v. Facebook, Inc.*, 2017 WL 3581179, at *8 (N.D. Cal. Aug. 18, 2017) (granting final approval of settlement providing for declaratory and injunctive relief in litigation alleging Facebook engaged in user privacy violations), *aff'd.*, 951 F.3d 1106 (9th Cir. 2020).

Through this Settlement, Plaintiff and Class Members gain significant benefits without having to face further risk. The benefits obtained here are substantial, given the complexity of the litigation and the significant risks and barriers that loomed in the absence of Settlement. Any of these risks could easily have impeded, if not prevented, Plaintiff's and the Settlement Class's successful prosecution of these claims. As explained in Plaintiff's Amended Motion for Preliminary Approval, data breach cases are especially risky, expensive, and complex. Doc. 61 (outlining risks). Although data breach law is continuously developing, data breach cases are still relatively new, and courts around the country are still grappling with what legal

15

principles apply to the claims. *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 315 (N.D. Cal. 2018) (noting that "many of the legal issues presented in [] data-breach case[s] are novel"). Since the "legal issues involved [in data breach litigation] are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive law as well as other issues." *In re Target Corp. Customer Data Security Breach Litig.*, No. 14-2522 (PAM/JJK), 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015). The recovery achieved by this Settlement must be measured against the fact that any recovery by Plaintiff and Settlement Class Members through continued litigation could only have been achieved if Plaintiff was able to: (i) defeat Defendant's dispositive motion; (ii) certify a monetary relief class; (iii) defeat summary judgment; (iv) establish liability and damages at trial; (v) defeat potential decertification; and (vi) secure affirmation of the final judgment on appeal. The Settlement here is a fair and reasonable recovery for the Settlement Class in light of Defendant's defenses, and the challenging and unpredictable path of likely protracted litigation Plaintiff and the certified class would have faced absent the Settlement.

### 5. Class Counsel Assumed Considerable Risk to Pursue This Matter on a Pure Contingency Basis.

In undertaking to prosecute this case on a contingent fee basis, Class Counsel assumed a significant risk of nonpayment or underpayment. That risk warrants an appropriate fee. Indeed, "[a] contingency fee arrangement often justifies an increase in the award of attorney's fees." *Sunbeam*, 176 F. Supp. 2d at 1335 (quoting *Behrens*

*v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 548 (1988)); *see also In re Continental Ill. Sec. Litig.*, 962 F.2d 566 (7th Cir. 1992) (holding that when a common fund case has been prosecuted on a contingent basis, plaintiffs' counsel must be compensated adequately for the risk of non-payment); *Ressler*, 149 F.R.D. at 656 ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award"); *Walters v. Atlanta*, 652 F. Supp. 755, 759 (N.D. Ga. 1985), *modified*, 803 F.2d 1135 (11th Cir. 1986); *York v. Alabama Senate Bd. of Ed.*, 631 F. Supp. 78, 86 (M.D. Ala. 1986). As Judge King observed:

> Generally, the contingency retainment must be promoted to assure representation when a person could not otherwise afford the services of a lawyer... A contingency fee arrangement often justifies an increase in the award of attorney's fees. This rule helps assure that the contingency fee arrangement endures. If this "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Behrens*, 118 F.R.D. at 548.

The progress of this case to date shows the inherent risk faced by Class Counsel in accepting and prosecuting this matter on a contingency fee basis. Despite Class Counsel's effort in litigating this case, Class Counsel remain uncompensated for the time invested, in addition to the expenses they advanced. There can be no dispute that this case entailed substantial risk of nonpayment for Class Counsel. As of October 17, 2024, Class Counsel have devoted approximately $230,220.00 in attorney and paralegal time (432.70 hours) and litigation costs without the assurance

that they would recover those expenses.

### 6. The Requested Fee Comports with Fees Awarded in Similar Cases.

An award of twenty-five percent (25%) of the Settlement Fund is within the benchmark, whereas an award of one-third is a growing trend in this Circuit.[3] Numerous decisions within District Courts in this state and the Eleventh Circuit have found that a 33.33% fee is well within the range of reason under the factors listed by the court in *Camden I. See supra* FN2; *see also Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *5–6 (S.D. Fla. Sept. 26, 2012) ("The average percentage award in the Eleventh Circuit mirrors that of awards nationwide—roughly one-third.") (collecting case law from the Middle and Southern District of Florida awarding attorneys' fees comprising one third of common fund).

---

[3] *Waters*, 190 F.3d at 1292–98 (11th Circ. 1999) (affirming fee award of 33 1/3 % of settlement of $40 million); *Stoll*, No. 8:20-cv-01798 (M.D. Fla.) (approving attorneys' fees award of 1/3 of settlement in addition to litigation expenses); *Seghroughni v. Advantus Rest, Inc.*, 2015 WL 2255278, at *1 (M.D. Fla. May 13, 2015) ("An attorney's fee . . . which is one-third of the settlement fund . . . is fair and reasonable in light of the results obtained by the Lead Counsel, the risks associated with this action, the Lead Counsel's ability and experience in class action litigation, and fee awards in comparable cases."); *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *4 (S.D. Fla. Sept. 26, 2012) ("One-third of the recovery is considered standard in a contingency fee agreement."); *Morefield v. NoteWorld, LLC*, 2012 WL 1355573 (S.D. Ga. April 18, 2012) (awarding fees of 33 1/3% of the $1,040,000 settlement fund in addition to expenses); *Atkinson v. Wal-Mart Stores, Inc.*, 2011 WL 6846747, at *6 (M.D. Fla. Dec. 29, 2011) (approving class settlement with one-third of the maximum $2,020,000 common fund); *In re Terazosin Hydrochloride Antitrust Litig.*, No. 99-1317, (Doc. 1557 at 8–10) (S.D. Fla. Apr. 19, 2005) (awarding class counsel 33.3% of settlement fund in part because they prosecuted the action on a wholly contingent basis); *In re: Managed Care Litig. v. Aetna*, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003) (awarding fees and costs of 35.5% of settlement of $100 million); *Gutter v. E.I. DuPont De Nemours & Co.*, No. 95-2152, (Doc. 626 at 7) (S.D. Fla. May 30, 2003) (awarding class counsel 33.3% of the Settlement Fund as attorneys' fees ($1,201,728.42) after expending significant time and resources on a purely contingent basis under the common fund theory).

Class Counsel's fee request falls below the range of the private marketplace, where contingency fee arrangements often approach or equal forty percent of any recovery. *See Continental*, 962 F.2d at 572 ("The object in awarding a reasonable attorneys' fee . . . is to simulate the market."); *RJR Nabisco, Inc. Sec. Litig*., Fed. Sec. L. Rep. (CCH) ¶ 94, 268 (S.D.N.Y. 1992) ("[W]hat should govern [fee] awards is . . . what the market pays in similar cases"). And, "[i]n tort suits, an attorney might receive one-third of whatever amount the Plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery." *Blum v. Stenson*, 465 U.S. 886, 904 (1984) (Brennan, J., concurring). Consequently, the attorneys' fees and litigation costs of $343,750.00 are appropriate and should be awarded.

### 7.  The Remaining *Camden I* and Other Factors Favor Approval.

The remaining *Camden I* factors also support Class Counsels' fee request. The burdens of this litigation and the results obtained on behalf of Plaintiffs and the Class weigh in favor of the fee requested. The fee request is firmly rooted in "the economics involved in prosecuting a class action." *In re Sunbeam*, 176 F.Supp.2d at 1333. "[P]roper incentives must be maintained to insure that attorneys of this caliber are available to take on cases of significant public importance like this one." *In re Checking*, 830 F. Supp. 2d at 1368.

In addition, the fact that the parties negotiated arduously and at length during mediation that went will into the late night, with numerous subsequent settlement sessions by telephone to finalize the Settlement, and that no class member has

objected[4] to the Settlement or its provision on attorneys' fees, weighs in favor of the fee requested. *See, e.g.*, *Allapattah Services, Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1204 (S.D. Fla. 2006) ("The lack of significant objection from the Class supports the reasonableness of the fee request.") (collecting cases); *Gevaerts v. TD Bank*, 2015 WL 6751061, at *10 (S.D. Fla. Nov. 5, 2015).

## B. An Analysis of Lodestar Confirms the Reasonableness of the Requested Attorneys' Fees

Under *Camden I*, use of the lodestar analysis is improper in common fund cases. *See In re Checking*, 830 F. Supp. 2d at 1362–63 (declining to perform lodestar cross check because *Camden I* "mandated the exclusive use of the percentage approach in common fund cases" and noting that "courts in this Circuit regularly award fees . . . without discussing lodestar at all") (internal marks omitted). Still, other courts have used lodestar as a "cross-check" to the percentage-of-the-fund analysis. *Waters*, 190 F.3d at 1289 ("[W]hile we have decided in this circuit that a lodestar calculation is not proper in common fund cases, we may refer to that figure for comparison."); *Pinto*, 513 F. Supp. 2d at 1343 (nothing that "[s]ome courts use the lodestar method as a cross-check of the percentage of the fund approach") (citing *Sunbeam*, 176 F. Supp. 2d 1336).

To determine the lodestar amount, the "court must multiply the number of hours

---

[4] The objection deadline is November 25, 2024.

reasonably expended by a reasonable hourly rate." *Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996). "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). "After the lodestar is determined . . . the court must next consider the necessity of an adjustment for results obtained." *Id*. at 1302. "If the results obtained were exceptional, then some enhancement of the lodestar might be called for." *Id*. (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986), *supplemented*, 483 U.S. 711 (1987)). "Even if the results obtained are exceptional, no enhancement is permissible unless there is specific evidence in the record to show that the quality of representation was superior to that which one would reasonably expect in light of the rates claimed." *Id*. (citing *Blum*, 465 U.S. at 899). "This is because the reasonable hourly rate already should reflect the skill demonstrated by the advocate." *Id*. "[E]nhancement may be appropriate if there is a risk of non-recovery of a fee in the case," such as in a contingent fee arrangement. *Id*.

The following chart summarizes the time and hour rates entered by attorneys and the professional staff of the firms in this matter up through October 17, 2024:

| MASTANDO & ARTRIP, LLC | | | |
|---|---|---|---|
| Name | Hourly Rate | Hours Billed | Total |

| Eric J. Artrip (Attorney) | $600 | 144 | $86,400.00 |
|---|---|---|---|
| D. Anthony Mastando (Attorney) | $600 | 73 | $43,800.00 |
| Beth Trees (Paralegal) | $600 | 42 | $5,250.00 |
| **Total** | | **259** | **$135,450.00** |
| QUINN, CONNOR, WEAVER, DAVIES & ROUCO, LLP | | | |
| Richard P. Rouco (Attorney) | $600 | 153.70 | $92,220.00 |
| Jeri Palmer (Paralegal) | $125 | 20 | $2,550.00 |
| **Total** | | **173.70** | **$94,770.00** |

A breakdown of Class Counsel's costs and expenses, again which, as asserted, are reasonable, are pulled from a computerized database maintained by individuals in the accounting office of Class Counsel's firms and which were checked for accuracy, are reflected below.

| Description | Subtotals | Totals Per Category |
|---|---|---|
| Court Fees | | |
| Filing Fees | $251.00 | $251.00 |
| Professional Services | | |
| Schreiber ADR | $3,200.00 | $3,200.00 |
| | **Total** | **$3,451.00** |

As stated above, a number of tasks will be required of Class Counsel's firms to conclude the litigation. It is reasonably estimates that the future number of hours required to bring this Settlement to finality would be:

| Additional Work Required of Class Counsel | Projected Hours |
|---|---|
| Work reviewing and responding to objections | 37 |
| Continued work preparing and finalizing the Motion for Final Approval, and preparing for and attending the final hearing | 48 |

| | |
|---|---|
| Responding to and litigating any appeals taken | unknown |
| Overseeing the administration of the Settlement | 26 |
| Total | 111 |

Here, for the duration of this litigation, Class Counsel have expended 432.70 attorney and paralegal hours. At their firms' respective hourly rates, the lodestar is at least $230,220.00. Of course, as this Court is aware, Class Counsel will continue to invest significant time in this matter through the settlement administration process, to prepare for and attend the final hearing to obtain final approval, and to defend the Court's final judgment against appeals (if any). That additional time will certainly bring the lodestar to an even higher amount.

Even if Class Counsel do not devote substantial efforts to the remainder of this case (*e.g.*, should the settlement not be appealed and the administration of benefits be routine), a lodestar cross-check of Class Counsel's *present* lodestar would result in an approximate 1.48x multiplier for Class Counsel's attorneys' fees. This does not include the approximate 111 hours that Class Counsel will devote to defend the settlement against any objections, prepare for final approval, address any appeals, and bring this litigation to finality. Had there been no common fund in the proposed Settlement and attorneys' fees were determined based solely on the lodestar method,

Class Counsel would have sought a "substantial multiplier" to apply to their lodestar for reasons earlier discussed, in particular, the result achieved for the Class, the complexity of the dispute and issues Class Counsel had to skillfully address, and the contingent nature of Class Counsel's fee arrangement. *See Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 2012 WL 12540344, at *5 (N.D. Ga. Oct. 26, 2012) (applying a multiplier of four times lodestar to "reflect such considerations as (1) the contingent nature of the fee; (2) the risk of the case (*i.e.*, the likelihood of success viewed at the tune of the filing); (3) the quality of representation; and (4) the result achieved," and surveying cases applying multipliers of approximately 4 to 9 times lodestar)). This would further dwarf the fees requested under the percentage-of-the-fund approach and the Settlement.

The Court should also not penalize Class Counsel for efficiency. Were different counsel with less experience involved in this case, that counsel would have needed to perform substantial research to survey the current state of the law on both merits and settlement. And there is no guarantee that different counsel would have secured the present Settlement benefits at this stage of litigation (if at all). Instead, the Settlement Class benefited from the extensive experience of Class Counsel.

Therefore, although not required in this District, it is clear from a lodestar cross check that the requested attorneys' fees in this case are reasonable.

### C. The Litigation Costs Are Reasonable

Class Counsel seeks reimbursement of litigation costs, which have been

included in the total amount of recovery from the Settlement Fund. As detailed above, these litigation costs were advanced without guarantee of repayment and benefited the Settlement Class: filing fees, mediation fees, and other typical litigation costs that a litigant would ordinarily incur in pursuit of a favorable recovery. Plaintiff respectfully submits that the expenses are reasonable and the Court should approve reimbursement of their litigation costs that have been included in recovery of attorneys' fees in the Settlement Fund.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court approve the requested award of attorneys' fees and litigation costs and expenses of twenty-five percent (25%) of the $1,375,000.00 Settlement Fund, totaling Three Hundred Forty-Three Thousand Seven Hundred Fifty Dollars ($343,750.00).

<u>Local Rule 3.01(g) Certification</u>

In accord with Local Rule 3.01(g), Plaintiff conferred with Defendant regarding the relief requested in this motion and Defendant does not object to the relief sought herein but only in connection with the proposed settlement of this case.

Submitted this 25th day of October 2024.

/s/ Eric J. Artrip
Eric J. Artrip
MASTANDO & ARTRIP, LLC
*Attorney for Plaintiff & Putative Class*
301 Holmes Ave. NE, Ste. 100
Huntsville, AL 35801
P: (256) 532-2222
F: (256) 513-7489 *tony@mastandoartrip.com*
*artrip@mastandoartrip.com*


/s/ Richard P. Rouco
Richard P. Rouco
QUINN, CONNOR, WEAVER,
DAVIES & ROUCO, LLP
*Attorney for Plaintiffs & Putative Class*
2 – 20th Street North, Ste. 930
Birmingham, AL 35203
Phone: 205-870-9989
Direct: 205-918-7430
*rrouco@qcwdr.com*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 25th day of October 2024, a true and correct copy of the foregoing document has been served upon all counsel of record via CM/ECF.

*/s/ Eric J. Artrip*
Eric J. Artrip