FILED

2025 Mar-12  PM 12:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **TERESA MADKIN, *individually and on behalf of similarly situated individuals,*** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Case No.: 2:21-cv-1177-AMM** |
| **AUTOMATION PERSONNEL SERVICES, INC.,** | ) ) ) | |
| **Defendant.** | ) ) | |

## ORDER

This case is before the court on Teresa Madkin's motion for final approval of class action settlement, Doc. 64, and motion for attorney's fees and litigation costs, Doc. 66. For the reasons stated below, the court **GRANTS** final approval of the settlement and awards the requested attorney's fees and costs.

## I.    BACKGROUND

### A. Factual Background and Procedural History

On November 24, 2024, Automation Personnel Services, Inc. ("APS"), an employment staffing agency, "became aware of unusual activity on its servers" and "discovered certain files were potentially accessed by unknown actors." Doc. 62 ¶ 1. The files included names, dates of birth, social security numbers, and financial information of APS's clients. *Id.* APS investigated which files may have been

accessed and notified approximately 299,253 individuals of the potential data leak. *Id.*

Ms. Madkin filed a class action complaint against APS for claims arising out the security incident. Doc. 35. Ms. Madkin alleged that she used APS's employment services and received notice that her data may have been accessed in the security incident. *Id.* ¶¶ 10, 21. She alleged that her identity was later used to obtain a credit card and a debit card, her food assistance account was compromised, she received charges for online accounts that she did not open, and her minor children began receiving unexpected bills. *Id.* ¶¶ 23–29. She alleged that the identity theft caused her a financial hardship and forced her to spend "countless hours away from caring for her children," who "require constant medical attention," in order to deal with its effects. *Id.* ¶¶ 32–33.

Ms. Madkin filed the complaint on behalf of herself and as a representative of all others similarly situated. *Id.* ¶ 34. She asserted claims of negligence, negligence per se, a violation of the Alabama Deceptive Trade Practices Act, breach of implied contract, and invasion of privacy. *Id.* ¶¶ 44–92.

APS moved to dismiss the complaint. Doc. 39. The court granted that motion in part and dismissed Ms. Madkin's breach of implied contract claim with prejudice. Doc. 43. The court denied the motion in all other respects. *Id.*

2

Later, the parties agreed to submit the case to mediation and selected Phillip McCallum of Schreiber ADR to mediate the case. Doc. 62 ¶¶ 4, 7; Doc. 64 at 4. The mediation "lasted more than eight (8) hours," and the parties continued negotiation efforts for several weeks following the mediation. Doc. 62 ¶ 7. Approximately two months later, they reached a settlement agreement. *Id.*

The parties then began negotiating attorney's fees, costs, and expenses. *Id.*; Doc. 64-3 ¶ 8; Doc. 62 ¶ 8. APS agreed that it would not object to Ms. Madkin's counsel's requests for attorney's fees and costs up to $343,750.00. Doc. 64-3 ¶ 11; *see* Doc. 64-1 ¶ 69. The parties agreed that the court's approval or disapproval of the negotiated attorneys' fees would not affect the effectiveness of the settlement. Doc. 64-3 ¶ 8; Doc. 61-1 ¶ 72.

Ms. Madkin filed an unopposed motion to direct class notice and grant preliminary approval of class action settlement. Doc. 53. The court denied preliminary approval of the settlement because (1) the settlement agreement improperly awarded Ms. Madkin an incentive fee and (2) the settlement agreement did not address the *Bennett* factors. Doc. 57 at 1 (citing *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984)).

Ms. Madkin filed an amended unopposed motion for settlement that cured the defects described in the court's order denying preliminary approval. Doc. 61. The court then granted preliminary approval of the settlement, and it provisionally

appointed Ms. Madkin to be the settlement class representative; Anthony Mastando, Eric Artrip, and Richard Rouco to be settlement class counsel; and Angeion Group ("Angeion") to be the settlement administrator. Doc. 63 at 5–7. The court also ordered Angeion to complete the notice program as provided in the settlement agreement. *Id.* at 7.

Ms. Madkin filed an unopposed motion for final approval of the class action settlement. Doc. 64. In that motion, Ms. Madkin asked the court to (1) approve the settlement, (2) certify the settlement class, (3) appoint Ms. Madkin as class representative, (4) appoint attorneys Mastando, Artrip, and Rouco as settlement class counsel, (5) find that the notice program as implemented satisfies Federal Rule of Civil Procedure 23 and due process, (6) appoint Angeion as the settlement administrator, (7) approve the procedures for exclusions and objections and exclude those who opted-out of the settlement, and (8) grant class counsel's contemporaneously filed motion for attorney's fees and costs. Doc. 64 at 2. She argued that the settlement is beneficial in the light of APS's "potentially case-dispositive defenses" and its "limited financial resources." Doc. 61 at 34. Later, Ms. Madkin then moved unopposed to award the provisionally appointed class counsel $343,750 in attorney's fees and costs. Doc. 66.

The court held a fairness hearing during which class counsel argued that the settlement was fair and beneficial to the class. They also confirmed that Ms. Madkin

would not receive an incentive award. The court invited any objections to the settlement, but no objections were made.

Later, Ms. Madkin filed under seal a list of four class members who opted-out of the settlement. Doc. 71.

## B. Terms of the Settlement

The following are the material terms of the settlement:

### 1. The Settlement Class

The settlement class is defined as follows:

> All persons residing in the United States or its territories whose personally identifiable information was identified as potentially being impacted in the November 2020 data security incident announced by Automation Personnel Services, Inc.[,] in March 2021.

Doc. 61-1 ¶ 31. Excluded from the class are "any judges presiding over this Litigation," "their immediate family members, and any members of the judges' judicial staff," "the officers and directors of [APS] and their immediate family members," "[c]lass [c]ounsel and their immediate family members," and "persons who timely and validly request exclusion from the [s]ettlement [c]lass, and the legal representatives of each of these excluded categories of persons." *Id.* ¶ 32.

### 2. Benefits to Class Members

The settlement agreement offers three benefits to class members: (1) reasonable out-of-pocket losses up to $5,000, (2) compensation for lost time spent

as a result of the security incident at a rate of twenty dollars an hour for up to four hours, and (3) one year of free credit monitoring by Angeion. *Id.* ¶¶ 41–42. A member who seeks reasonable out-of-pocket losses up to $5,000 must submit "a valid and timely Claim Form and Reasonable Documentation supporting the claim for Out-of-Pocket Losses" and "otherwise comply with the terms of the Claim Form." *Id.* ¶ 41. A class member who seeks compensation for lost time "can submit a self-verifying statement under penalty of perjury" to support their claim. *Id.* No class member with a valid claim may receive more than $5,000, and a class member cannot aggregate claims for out-of-pocket losses and lost time to receive an amount in excess of $5,000. *Id.*

Angeion has authority to determine which claims are valid. That is, it has "the discretion and authority to determine whether and to what extent the claimant is entitled to a cash payment for his or her [c]laim, based on the submission of a valid and timely Claim Form, and Reasonable Documentation, and the other criteria set forth" in the settlement agreement. *Id.* ¶¶ 30, 41, 48. Angeion is "not related to or affiliated" with any named party or counsel in the case. Doc. 64-1 ¶ 2.

### 3. The Settlement Fund

The parties agreed that APS will pay $1.375 million in total to settle the case, which is split into two payments. First, APS agreed to pay Angeion a portion of that amount as necessary for Angeion to provide notice to the class. Doc. 61-1 ¶ 39. If

the court gives final approval of the settlement and no appeal follows, APS will pay the remaining amount into a settlement fund. *Id.* ¶ 40. Angeion will use these funds to pay class members with valid claims, costs of administration of the settlement, taxes, expenses, and any fees or costs awarded to class counsel. *Id.*

Angeion will pay the costs of administering the settlement, "including all costs to carry out the [n]otice [p]rogram and any [f]ee and [e]xpense [a]ward," before it pays any class member for a valid claim. *Id.* ¶ 43. If the $1.375 million is insufficient to cover the payment of all valid claims, "the cash benefits to each eligible [s]ettlement [c]lass [m]ember with a [v]alid [c]laim would be decreased on a pro rata basis." *Id.* If all costs, expenses, and valid claims are paid and money remains in the settlement fund, those cash benefits "would be increased on a pro rata basis." *Id.*

Angeion will distribute payments for valid claims as follows: once a class member timely submits a claim form that is supported by reasonable documentation or an attestation, and that claim form is approved by Angeion, Angeion distributes the money in the settlement fund by mailing a check to valid claimants no later than 180 days from the "Effective Date," which is ten days after the court approves the settlement (absent an appeal). *See* Doc. 61-1 ¶¶ 14, 46. If Angeion is notified that the claimant is deceased, Angeion mails the check to the claimant's estate. *Id.* ¶ 46. And if any check has not been redeemed by the 185th day of the mailing of the last

settlement check, the funds identified in the check will be awarded to a nonprofit organization. *Id.* ¶ 47.

### 4. Notice and the Claims Program

The notice program consists of "a direct-mail postcard notice to those Settlement Class Members for whom [APS] can ascertain a mailing address from its records with reasonable effort, as updated using a National Change of Address database" and the creation of a website that informs class members of pertinent information, such as the terms of the settlement agreement, the class notice, all court orders, the procedure for an individual to opt-out of or object to the settlement, and important dates. Doc. 61-1 ¶¶ 13–27, 55–56.

After this court's preliminary approval of the settlement, Angeion carried out the notice program. On or around August 27, 2024, Angeion received "a single data file containing a total of 299,253 records" from APS that "contained the names and mailing addresses of Settlement Class Members." Doc. 70 ¶ 7. On September 25, 2024, Angeion mailed settlement notices to all members, *id.* ¶ 8, and reported that "66,445 notices returned as undeliverable," *id.* ¶ 11. Angeion updated 54,074 of those 66,445 notices with updated addresses and remailed them. *Id.* Angeion reported "a cumulative successful delivery rate of 297,247 (99.33%) and undeliverable rate of 2,006 (0.67%)." *Id.* ¶ 12.

Angeion also created a settlement website, which received 59,105 page views and 28,955 sessions. *Id.* ¶¶ 13–16. Angeion received four opt-out requests and approximately 1,776 claim form submissions. *Id.* ¶¶ 17, 20. It reported "607 out-of-pocket loss claims totaling $1,261,366.16; 812 lost time claims totaling $62,758.00; and 819 credit monitoring claims." *Id.* ¶ 19. As of February 5, 2025, Angeion was in the process of reviewing responses to deficiency letters for several claims "for a full assessment of each claim's validity." *Id.* ¶¶ 18–19.

### 5. Releases

In exchange for the benefits offered by the settlement agreement, the class members release "any claims" that they have "under the law of any jurisdiction" for damages arising out of the security incident. Doc. 61-1 ¶¶ 65–66. The settlement does not release "any claims arising from or relating to any conduct by [APS] after the Effective Date." *Id.* ¶ 66.

### 6. Attorney's Fees

Class counsel have applied for a percentage-based fee of $343,750, or twenty-five percent of the settlement fund. The amounts are in accordance with the terms of the settlement agreement, Doc. 61-1 ¶ 69, and were not negotiated by the parties until after the negotiations regarding the relief to be afforded to the class had concluded, Doc. 64-3 ¶¶ 4–5; Doc. 62 ¶ 8 ("The [p]arties did not discuss attorneys'

fees . . . at any time prior to agreeing to the essential terms of the [p]arties' settlement.").

Class counsel supported their requests for attorneys' fees and costs with their own joint declaration, Doc. 64-3, and a declaration from Brent Irby, an experienced class action attorney, Doc. 65. Class counsel testified that they have invested numerous hours into preparing, negotiating, and resolving this litigation and believe that the requested fees and costs are reasonable. Doc. 64-3 ¶ 4–5. Mr. Irby testified to his belief that class counsel's fees are "justified," Doc. 65 ¶ 7, and that they "substantially discounted their fees in the interests of the [c]lass," *id.* ¶ 9. He testified that he believed that the settlement was "negotiated at arms-length" and was "negotiated aggressively" by the parties. *Id.* ¶ 9.

## II.    ANALYSIS

### A. The Proposed Settlement – Reasonableness, Adequacy, and Fairness

Federal Rule of Civil Procedure 23(e) requires court approval of class action settlements. A district court should grant approval of a class action settlement only where it finds that the terms of the agreement are fair, reasonable, and adequate. Fed. R. Civ. P. 23(e); *Ponzio v. Pinon*, 87 F.4th 487, 494 (11th Cir. 2023).

Rule 23(e) provides several factors for courts to consider when determining whether a settlement is fair, reasonable, and adequate, including whether (1) "the class representatives and class counsel have adequately represented the class;" (2)

"the proposal was negotiated at arms-length;" (3) "the relief provided for the class is adequate" when considering "the costs, risks, and delay of trial and appeal," "the effectiveness of any proposed method of distributing relief to the class," "the terms of any proposed award of attorney's fees," and "any agreement required to be identified;" and (4) "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2).

The Eleventh Circuit "has also instructed district courts to consider several additional factors called the *Bennett* factors" when contemplating settlement approval. *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1273 (11th Cir. 2021) (citing *Bennett*, 737 F.2d at 986); *see also Ponzio*, 87 F.4th at 495 (noting that the factors listed in Rule 23(e) do not "displace" the *Bennett* factors and that the *Bennett* factors "can, where appropriate, complement" the Rule 23(e) factors). "The [*Bennett*] factors include (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved." *Equifax*, 999 F.3d at 1273.

Because "*Bennett* factors (1), (2), (4), and (6) can inform" the third Rule 23(e) factor—"whether the relief provided to the class is adequate"—and "*Bennett* factors

(3) and (5) can inform" the fourth Rule 23(e) factor—"whether the proposal treats class members equitably relative to each other," *Ponzio*, 87 F.4th at 495, each of those *Bennett* factors is addressed within the context of the corresponding Rule 23(e) factor.

### 1. The Class Was Adequately Represented.

The first factor the court considers under Rule 23(e)(2) is whether the class representative and class counsel have adequately represented the class. As explained below, *see infra* Section II.B,1.d, both Ms. Madkin and class counsel have adequately represented the class in negotiating the proposed settlement.

Ms. Madkin possesses the same interest and has suffered the same injury as the class—the release of highly confidential information in the security incident. Doc. 35 ¶¶ 10, 12, 14, 20–33. Ms. Madkin has no apparent conflicts of interest with the remaining class members, and class counsel have testified that Ms. Madkin "always expressed concern about obtaining the best result for all the individuals potentially affected by the data breach incident." Doc. 64-3 ¶ 6. Ms. Madkin is an adequate class representative.

Class counsel are experienced in class action litigation, diligently negotiated the settlement, and suggested agreement to the proposed settlement only after evaluating the parties' claims and defenses and considering the possible results and obstacles in pursuing litigation. Doc. 64-3 ¶¶ 7, 12–13, 17. No party has identified a

conflict of interest between class counsel and the class, nor has any member argued that class counsel have not acted fairly and adequately when representing the class. In addition, class counsel employed a mediator to begin their negotiations with APS and negotiated the payment of their fees separately from the settlement, Doc. 64-3 ¶¶ 7–8, both of which support a finding that they acted fairly, *see Ponzio*, 87 F.4th at 507–08. They testified that they believed the settlement agreement "is in the best interests of the" class to "assure meaningful and timely benefits to the [s]ettlement [c]lass [m]embers." Doc. 64-3 ¶ 19. Class counsel have adequately represented the class.

### 2.  The Proposed Settlement Was Negotiated at Arm's Length.

The second factor the court considers under Rule 23(e)(2) is whether the parties negotiated the settlement at arm's length and whether the settlement is the product of fraud or collusion. *See Johnson v. NPAS Sols., LLC,* 975 F.3d at 1262.

There are no facts suggesting that the settlement was the product of anything other than fair and non-collusive negotiations. The parties engaged a reputable mediation firm to aid their negotiations in this case. Doc. 64-3 ¶ 7. Although the parties did not reach a settlement at the mediation, *see* Doc. 64 at 5, the employment of a mediator supports the existence of an arms-length negotiation, *see Ponzio*, 87 F.4th at 507. The parties also "did not discuss attorneys' fees during the mediation,

or at any time prior to agreeing to the essential terms of the [p]arties' [s]ettlement." Doc. 62 ¶ 8.

The court carefully considered whether the presence of the clear sailing agreement reflects collusion between the parties, *see* Doc. 62 ¶ 19, and has satisfied itself that the settlement was reached only after genuine, arm's length negotiations. A clear sailing provision is an agreement in which "the defendant agrees not to contest class counsel's fee request up to a certain level." *Drazen v. Pinto*, 106 F.4th 1302, 1340 (11th Cir. 2024) (plurality opinion) (cleaned up). A clear sailing provision may suggest fraud or collusion because it "could allow a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class." *Poertner v. Gillette Co.*, 618 F. App'x 624, 630 n.6 (11th Cir. 2015) (cleaned up). But a clear sailing provision does not preclude the finding of non-collusiveness where the record demonstrates that "parties settled only after engaging in extensive arms-length negotiations." *Id.* Such a record is present here.

In addition, funds remaining in the settlement fund after all expenses and claims are paid do not revert to APS; instead, "the cash benefits to each eligible [s]ettlement [c]lass [m]ember with a [v]alid [c]laim would be increased on a pro rata basis." Doc. 61-1 ¶ 43. Also, the parties removed any award of incentive fees from

the settlement agreement. *Compare* Doc. 53 ¶ 70 *with* Doc. 61 ¶ 70. These facts demonstrate an arm's length negotiation by class counsel and APS.

### 3. The Relief Provided to the Class Is Adequate.

The third factor the court considers under Rule 23(e)(2) is whether the relief provided to the class is adequate taking into account (1) "the costs, risks, and delay of trial and appeal," (2) "the effectiveness of any proposed method of distributing relief to the class," (3) "the terms of any proposed award of attorney's fees," and (4) "any agreement made in connection with the proposal."

### a. The Risks, Costs, and Delay of Continued Litigation

In considering the adequacy of a class action settlement, the court "compares" the settlement terms "with the likely rewards the class would have received following a successful trial of the case." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). The court is limited to that inquiry and is not required "to find that a settlement agreement provides the same scope of relief that could be obtained if class members were wholly successful at trial." *Ponzio*, 87 F.4th at 506. After all, "compromise is the essence of a settlement." *Cotton*, 559 F.2d at 1330.

Class counsel testified that they believe that the class would face significant obstacles in continued litigation, including potentially case-dispositive defenses. *See* Doc. 61-3 ¶ 13; Doc. 62 ¶ 20. Indeed, district courts across the country have dismissed many data breach lawsuits for a variety of reasons, including on the

grounds that the plaintiffs lacked Article III standing or that the loss of personal identification information is not a legally cognizable claim. *See Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060(RMB)(RLE), 2010 WL 2643307, at *1–2 (S.D.N.Y. June 25, 2010) (collecting cases).

Moreover, litigating a class action lawsuit is a lengthy and burdensome endeavor. Class counsel testified that the class would incur "high costs and expense[s]" in litigating the security breach case, including the costs of retaining expert witnesses and incurring additional attorney's fees. Doc. 62 ¶ 20. Class counsel testified that many class members who will benefit from the settlement would not pursue individual claims because of the high costs of litigation. Doc. 61-3 ¶ 12. Those who decided to pursue their claims would face APS's "vigorous defense of the litigation." *Id.*; *see also* Doc. 61-1 ¶ 34 (stating that APS "vigorously disputes the claims alleged" in this case and "does not . . . admit any liability or wrongdoing").

With these considerations in mind, the court finds that had the case not settled, the parties would likely incur substantial litigation fees and expenses in discovery, motion practice, expert retention, and trial and appellate expenses, and Ms. Madkin would take considerable risk in prosecuting her claims due to the uncertain nature of data breach litigation. The court finds that the parties achieved effective relief in the settlement agreement in the face of significant risks, costs, and delays of continued litigation.

### b.  The Method of Distributing Relief

Rule 23(e)(2)(C)(ii) requires the court to consider the effectiveness of the proposed method of distributing relief to the class, including the method for processing claims.

Class members can file a claim form through a straightforward claims process. Those claiming out-of-pocket losses must supply reasonable documentation supporting their losses, but such requirements are likely less rigorous than the documents he or she would have to present if litigation were pursued. The determination of whether a claim form is reasonably supported, is timely, or states a valid claim is made by an independent third party that is "not related to or affiliated" with any named party or counsel in the case—Angeion. Doc. 61-1 ¶¶ 30, 41, 48; Doc. 64-1 ¶ 2.

In addition, class members may enroll in free credit monitoring without any documentation. This relief is targeted to mitigate against the serious dangers inherent in disclosure of the confidential information potentially accessed in the security incident. Offering financial compensation for out-of-pocket losses and lost time combined with the year of free credit monitoring are measures aimed at redressing the risk of identity theft and financial fraud inherent in the leak of such sensitive information, and this relief is available to all class members alike. *See* Doc. 61-1 ¶

42. Angeion is tasked with reviewing the claim forms and issuing checks to those who have valid claims. *See id.* ¶ 46.

For these reasons, the court concludes that the method of distributing relief is effective.

### c. The Reasonableness of the Terms Relating to Attorney's Fees

The next consideration under Rule 23(e)(2)(C) is whether the attorney's fees requested under the settlement are reasonable. Class counsel request fees and costs based on a percentage of the settlement fund. For the reasons explained in detail below, *see infra* Section II.C, the court finds that the requested fees and expenses are reasonable under prevailing precedent and the facts of this case.

### d. Agreements Required to be Identified by Federal Rule of Civil Procedure 23(e)(3)

Rule 23(e)(2)(C)(iv) requires the court to consider the relief afforded to the class in the light of "any agreement made in connection with the propos[ed]" settlement. Rule 23(e)(3) places an affirmative burden on parties to "file a statement identifying any agreement made in connection with the proposal." Ms. Madkin reported that "[t]here are no separate agreements made in connection with the [s]ettlement proposal." Doc. 64 at 29.

### e. *Bennett* Factors 1, 2, 4, and 6

"*Bennett* factors (1), (2), (4), and (6) can inform whether the relief provided to the class is adequate." *Ponzio*, 87 F.4th at 495 (cleaned up). The first *Bennett* factor is likelihood of success at trial. *Ponzio*, 87 F.4th at 494 (cleaned up). The second *Bennett* factor is the range of possible recovery if the parties pursued litigation. *Id.* (cleaned up). The fourth *Bennett* factor is the complexity, expense, and duration of litigation. *Id.* (cleaned up). The sixth *Bennett* factor is the state of proceedings at which settlement was achieved. *Id.* (cleaned up).

As explained above, the evidence shows that the likelihood of success at trial is uncertain, and the litigation of the claims asserted in this lawsuit would require an investment of significant time. *See* Doc. 64-3 ¶ 19; Doc. 64 at 24–25. Pursuing litigation would also require the litigants to incur significant fees and expenses, including the retention of expert witnesses to explain the highly technical facts involved in a data breach lawsuit, and class counsel testified that absent this class action lawsuit and settlement, they anticipated that "individual class members would not pursue individual claims." Doc. 64-3 at ¶ 12.

The parties reached the settlement early in the litigation—before discovery was concluded. The court is aware that early settlement, especially a settlement that was reached before the certification of a class, may require the application of a higher scrutiny when reviewing a settlement agreement. *See Drazen*, 106 F.4th at 1329;

Manual for Complex Litigation (Fourth) § 21.612 (2004). The court has applied a heightened scrutiny and finds that the settlement terms provide adequate relief to the class. Class counsel has indicated that it "conducted an examination and investigation of the facts and law relating to the matters set forth in the [c]omplaint," Doc. 64-3 ¶ 4, and the court finds that they had sufficient knowledge of the claims to fairly weigh the risks and benefits provided by the settlement. In addition, the court agrees that "[e]arly settlement has allowed costs to stay modest" and "protracted litigation would only serve to increase costs and have a potentially negative effect on class recovery." Doc. 64 at 25.

For these reasons, the court finds that *Bennett* factors (1), (2), (4), and (6) weigh in favor of finding that the relief provided to the court is adequate.

### 4. Class Members Are Treated Equitably Relative to Each Other.

The fourth factor the court considers under Rule 23(e)(2) is whether class members are treated equitably relative to one another. In this inquiry, the court considers whether the settlement provides equitable "treatment of some class members vis-à-vis others." Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment.

All class members have similar claims arising from the same event—the APS security incident. All class members are eligible to seek the various benefits provided by the settlement. That is, the procedures for submitting a claim form and the

20

benefits offered to valid claimants are uniform regardless of the identity of the class member submitting the claim. *See* Doc. 61-1 ¶ 41. And although the validity of a claim form and the monetary amount awarded for each claim is discretionary, that discretion resides in an independent third party—Angeion—which is guided by objective considerations, such as the timeliness of the claim form and the submission of reasonable documentation in support of the claim. *See id.* ¶ 48.

Two *Bennett* factors shed light additional light on the satisfaction of this Rule 23(e) factor: *Bennett* factor three—the substance and amount of opposition to the settlement—and five—the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable. *Ponzio*, 87 F.4th at 495. There has been no opposition to the settlement. With respect to the range of possible recovery at which a settlement is fair, adequate, and reasonable, class counsel, who are experienced in class action litigation, testified that this settlement is fair in the light of any possible recovery that may be awarded at trial and is "consistent with other settlements in data security cases." Doc. ¶ 13. The court is "entitled to rely upon the judgment of experienced counsel for the parties," and does so here. *Cotton*, 559 F.2d at 1330.

For all of these reasons, the court finds that class members are treated equitably relative to each other.

**B. Certification of the Settlement Class**

Next, the court examines whether the proposed settlement class may be certified under Rule 23(a)'s prerequisites and under Rule 23(b)(3). First, four requirements provided in Rule 23(a) must be satisfied: (1) "the class must be so numerous that joinder of all members is impracticable," (2) "there must be questions of law or fact common to the class," (3) "the class representatives' claims or defenses must be typical of the class's claims or defenses," and (4) "the class representatives must fairly and adequately protect the interests of the class." *Equifax*, 999 F.3d at 1274–75 (cleaned up). "These four requirements are often referred to as the numerosity, commonality, typicality, and adequacy requirements[.]" *Id.* at 1275.

In addition to meeting the four requirements of Rule 23(a), "parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Only Rule 23(b)(3) is relevant here: "A class action may be maintained if . . . the court finds that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The two requirements provided in Rule 23(b)(3) are referred to as "predominance" and "superiority." *See Windsor*, 521 U.S. at 615.

22

The court previously preliminarily certified the following class for purposes of settlement only:

> All persons residing in the United States or its territories whose personally identifiable information was identified as potentially being impacted in the November 2020 data security incident announced by Automation Personnel Services, Inc. in March 2021.
>
> Excluded from the Settlement Class is any judges presiding over this Litigation, their immediate family members, and any members of the judges' judicial staff, the officers and directors of Defendant and their immediate family members, Class Counsel and their immediate family members, and persons who timely and validly request exclusion from the Settlement Class, and the legal representatives of each of these excluded categories of persons.

Doc. 63 at 3. Ms. Madkin seeks final certification of this class. *See* Doc. 64 at 6, 10–19.

### 1. The requirements of Federal Rule of Civil Procedure 23(a) are satisfied.

#### a. Numerosity

Rule 23(a)(1) requires that a proposed settlement class be so numerous that joinder of all class members is impracticable. The settlement class consists of approximately 299,253 individuals. Doc. 70 ¶ 7. The court finds that joinder of all class members would be impracticable and that the numerosity requirement is satisfied.

### b. Commonality

"Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury," such that "all their claims can productively be litigated at once." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (cleaned up). Stated another way, it "requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (cleaned up). "[F]or purposes of Rule 23(a)(2), even a single common question will do." *Wal-Mart Stores*, 564 U.S. at 359.

Here, the injuries from all class members arise from the same incident—the APS security incident—and individuals seeking to recover from injuries arising out of the security incident will assert substantially similar legal claims—that APS breached a duty of care through its conduct related to class members' personal identification information. The commonality requirement is satisfied.

### c. Typicality

Rule 23(a)(3) requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class. "Typicality measures whether a sufficient nexus exists between the claims of the named representative and those of the class at large." *Hines v. Widnall*, 334 F.3d 1253, 1256 (11th Cir. 2003). A sufficient nexus is established if the claims or defenses of the class and the class

representative arise from the same event and are based on the same legal theory. *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984); *see also Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322 (11th Cir. 2008) ("A class representative must possess the same interest and suffer the same injury as the class members in order to be typical under Rule 23(a)(3)." (cleaned up)).

Ms. Madkin's claims are typical compared to other class members' claims. Her claims arise from the same security incident and are based on the same legal theory—that APS had a legal duty to protect the class members' personal identification information and breached that duty when the class members' information was accessed by an unknown third party. The court finds that the typicality requirement is satisfied.

### d. Adequacy

Rule 23(a)(4) requires that the representatives of the class "fairly and adequately protect the interests of the class." *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1253 (11th Cir. 2003). "[T]his requirement applies to both the named plaintiff and counsel." *Id.* (citing *Windsor*, 521 U.S. at 626 n.20). For the reasons explained below, the court finds that the class representative and class counsel are adequate representatives of the class.

Rule 23(a)(4) requires that a class representative "be part of the class and possess the same interest and suffer the same injury as the class members." *Windsor*,

521 U.S. at 625–26; *see also Equifax*, 999 F.3d at 1275 ("The adequacy requirement is that a class representative must adequately protect the interests of those he purports to represent." (cleaned up)). "The adequacy-of-representation requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Busby*, 513 F.3d at 1323. The existence of a conflict of interest is sufficient to defeat representative status only where the conflict "is a fundamental one, going to the specific issues in the controversy." *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 989 (11th Cir. 2016).

Neither the court nor any party have identified a conflict of interest between Ms. Madkin and the class or argued that Ms. Madkin has not adequately prosecuted the claims alleged in the complaint. Further, class counsel have testified that Ms. Madkin "always expressed concern about obtaining the best result for all the individuals potentially affected by the data breach incident," Doc. 64-3 ¶ 6, and Ms. Madkin suffered from the same injury as the other members of the class generally. The court is satisfied that Ms. Madkin is an adequate class representative.

In addition to the named representative, a district court should also appoint class counsel that "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g). Counsel that have conflicts of interest with the class so serious that they may not serve as an "honest fiduciar[y] for the class as a whole" do not satisfy

the fair and adequate requirement of Rule 23(g). *See West Morgan-East Lawrence Water & Sewer Auth. v. 3M Co.*, 737 F. App'x 457, 464 (11th Cir. 2018).

Class counsel have no apparent conflicts of interest with the class, and no party or class member has argued that they have not "fairly and adequately represent[ed] the interests of the class." Fed. R. Civ. P. 23(g). They have demonstrated that they diligently negotiated the settlement through an arm's length negotiation. The court is satisfied that class counsel have adequately represented the class.

### 2. The settlement class meets the requirements of Federal Rule of Civil Procedure 23(b)(3).

Ms. Madkin seeks final certification of the class under Rule 23(b)(3). Doc. 64 at 15. Rule 23(b)(3) provides that "[a] class action may be maintained if . . . the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

### a. Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Windsor*, 521 U.S. at 623. "Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive and monetary relief." *Williams*, 568 F.3d at 1357 (cleaned

27

up). The "impact" of the common issues of law and fact must concern both liability and injury and can usually be proven with "generalized proof." *Id.* at 1358 (cleaned up).

Rule 23(b)(3) does not require that "all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions." *Busby*, 513 F.3d at 1324 (cleaned up). But "[i]f, after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points to establish most or all of the elements of their individuals claims," predominance is not met. *Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010) (cleaned up).

Here, common issues predominate over class members' individual questions. The question whether APS breached any existing duty owed to safeguard the personal identification information it possessed is common to both Ms. Madkin and other class members. Whether APS owed and breached such a duty involves factual and legal issues the resolution of which will "directly impact every class member's effort to establish liability and entitlement to . . . relief" and that could be proven with generalized evidence of the data breach and resulting harm to class members. *Williams*, 568 F.3d at 1357. The court finds that the predominance requirement is satisfied.

28

### b. Superiority

"Certification under Rule 23(b)(3) also requires that the class action device is superior to other available methods for fairly and efficiently adjudicating the controversy." *Williams*, 568 F.3d at 1358. The superiority assessment requires the court to consider "the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs." *Sacred Heart Health Sys.*, 601 F.3d at 1183–84 (cleaned up). A court's predominance assessment "has a tremendous impact" on the superiority assessment because a class action becomes "more desirable" when many "common issues predominate over individual issues." *Id.* at 1183 (cleaned up).

Rule 23(b)(3) provides several factors relevant to assessing the superiority of a class action, including (1) "the class members' interests in individually controlling the prosecution or defense of separate actions," (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members," (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum," and (4) "the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)–(D); *Carriuolo*, 823 F.3d at 989.

Resolution of this case by class action is superior to other available methods. The potential recovery available if each individual member of the class pursued his or her own claim, the complexity and cost of litigating a data breach lawsuit, and the

limited financial resources of APS demonstrate that resolution of the case as a class action is advantageous to the class members. *See Windsor*, 521 U.S. at 617 ("The very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." (cleaned up)); *Carriuolo*, 823 F.3d at 989 (crediting a district court's assessment that superiority is met where "individual claims may be too small for separate action by each class member"). The common issues of law and fact that predominate in the class members' claims further supports the superiority of a class action in this case.

An analysis of the factors listed in Rule 23(b)(3)(A)–(D) confirms the court's conclusion. Because of the low recovery and the high expense of class action litigation, many individuals in the putative class would not pursue their own claims, and the similarities in the law and facts of any individual claims suggest that the class members have little interest in individually controlling the prosecution of the case. Doc. 64-3 ¶ 12. The court is unaware of any other litigation concerning the APS security incident and finds that a class of approximately 300,000 members is manageable for purposes of the executing the settlement agreement. The superiority requirement is satisfied.

In sum, the requirements of Rule 23(a) and (b)(3) are satisfied, and the settlement class is **CERTIFIED** for purposes of settlement only. The persons who

opted to be excluded from the settlement, Doc. 71, are not included in the settlement class and are not bound by the settlement.

## C. The Motion for Attorneys' Fees and Expenses

Ms. Madkin requests that the court award $343,750 in attorney's fees and expenses as provided in the settlement agreement. Doc. 66. In this circuit, "attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991). Although "[t]here is no hard and fast rule mandating a certain percentage of a common fund which may reasonably be awarded," twenty-five percent of the fund is considered the "benchmark." *Id.* (cleaned up); *see Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1242 (11th Cir. 2011) (stating that the "majority of fees" in common fund cases "are reasonable where they fall between 20–25% of the claims").

Here, Ms. Madkin seeks an award of attorney's fees that is twenty-five percent of the settlement fund, *see* Doc. 64-3 ¶ 11, which aligns with the "benchmark," *Dukle*, 946 F.2d at 775. This percentage weighs in favor of a finding that the requested attorney's fees are reasonable. *See Faught*, 668 F.3d at 1242.

The percentage of the settlement fund alone demonstrates the reasonableness of the requested fees. *See Faught*, 668 F.3d at 1242 (affirming a district court's determination "that because [twenty-five percent] is generally accepted as

31

reasonable in common fund cases, . . . it should also be considered reasonable in th[at] case"). But in an abundance of caution, the court also addresses factors identified by the Eleventh Circuit as relevant to the reasonableness inquiry, known as the *Johnson* factors, that support the reasonableness of the requested fee. *Dukle*, 946 F.2d at 775.

The *Johnson* factors include (1) "the time and labor required," (2) "the novelty and difficulty of the question involved," (3) "the skill requisite to perform the legal service properly," (4) "the preclusion of other employment by the attorney due to accepting the case," (5) "the customary fee," (6) "whether the fee is fixed or contingent," (7) "the time limitations imposed by the clients or the circumstances," (8) "the results obtained," (9) "the experience, reputation, and ability of the attorneys," (10) "the undesirability of the case," (11) "the nature and the length of the professional relationship with the clients," and (12) "fee awards in similar cases." *Id.* at 772 (cleaned up).

In addition to the *Johnson* factors, the court may also consider "the time required to reach a settlement, whether there are any substantial objections by class members or other parties to the settlement terms or the fees requested by counsel, and non-monetary benefits conferred upon the class by the settlement, and the economics involved in prosecuting a class action." *Id.* at 775.

32

The court does not address three of the factors listed above—the time limitations imposed by the clients, the circumstances or the undesirability of the case, or the nature and length of the professional relationship with clients—due to their limited applicability to this case. The court addresses each of the remaining factors below:

### 1.  Time and Labor Involved

The court observes that class counsel have invested significant time and labor in prosecuting, negotiating, and settling this case. Class counsel engaged in lengthy investigations of the strengths and weaknesses of the asserted claims under applicable law. Doc. 64-3 ¶ 5; Doc. 62 ¶ 5; Doc. 65 ¶ 7. They "interviewed, hired[,] and conferred with a number of expert witnesses to investigate the purported cause of [the data] breach, as well as [its] potential effects to Class members." Doc. 62 ¶ 15. They reviewed and produced limited discovery prior to the parties' mediation. Doc. 64-3 ¶¶ 4–5. And they participated in a mediation of the case and continued negotiations with APS after the mediation was unsuccessful. Doc. 62 ¶ 7.

After the parties reached a settlement, class counsel invested time and labor in drafting the motions for obtaining approval and overseeing Angeion's administration of the notice and claims process as provided by the settlement. Doc. 64-1 ¶ 5. Class counsel will continue to invest time and labor to oversee the administration of the settlement to finality. *Id.* The time and labor involved in the

prosecution and settlement of this case weighs in favor of approval of the requested fees.

### 2.  The Novelty and Difficulty of the Questions Involved

The law governing data breach litigation remains uncertain, and the prosecution of such claims is highly technical. As previously noted, many courts have dismissed data breach cases early in the proceedings, and class counsel, who are experienced class action, data breach lawyers, testified that Ms. Madkin would "face significant obstacles in certifying a class in a contested motion." Doc. 64-3 ¶ 13. They identified several of those obstacles—calculating and proving damages, difficulty certifying a class, and the possibility of APS asserting "case-dispositive defenses." Doc. 64 at 24; Doc. 62 ¶ 20; Doc. 64-1 ¶ 12–13. These obstacles demonstrate the difficulty of the questions involved in data breach litigation.

Moreover, the Eleventh Circuit has recently affirmed a district court's approval of a class action settlement of a data breach litigation that recognized the risks inherent in the uncertain nature of such lawsuits. *See Equifax*, 999 F.3d 1247. Accordingly, this factor weighs in favor of approval of the requested fees.

### 3.  The Skill Requisite to Perform the Legal Services Properly and the Experience, Reputation, and Ability of the Lawyers

Investigating and analyzing the necessary facts involved in a data breach claim requires an understanding of highly technical and complex facts. As such, the litigation of such claims requires considerable skill and experience. Class counsel

34

are experienced in these types of cases and are well-versed in class action lawsuits generally. *See* Doc. 65 ¶ 9; Doc. 64-3 ¶ 17. A fellow class action attorney stated that class counsel "enjoy a national reputation as preeminent class action attorneys." Doc. 65 ¶ 9. This factor weighs in favor of approval of the requested fees.

### 4.  The Preclusion of Other Employment

The scope, breadth, and volume of review, research, discovery practice, and motion practice involved in the litigation of a class action lawsuit is demanding and time consuming. The highly technical nature of data breach litigation requires the investment of time to gain an adequate understanding of the facts of the case. It is apparent to this court that class counsel spent time and labor working to prosecute and settle this lawsuit that it could have spent on other cases. Accordingly, this factor weighs in favor of approval of the requested fees.

### 5.  The Customary Fee

The percentage of the settlement fund requested by Ms. Madkin aligns with the "benchmark" recognized by the Eleventh Circuit. *See Dukle*, 946 F.2d at 775. Class counsel also presented evidence that the requested fees are "substantially discounted" from the customary fees charged in similar lawsuits. Doc. 65 ¶ 9.

### 6.  Whether the Fee is Fixed or Contingent

Class counsel accepted this case on a continency basis. Doc. 66 at 16; Doc. 65 ¶ 9. In so doing, counsel represented Ms. Madkin and, later, the class without

assurance that they would receive compensation for their efforts or reimbursement of their expenses. This factor weighs in favor of approval of the requested fees.

### 7. The Result Obtained

Class counsel negotiated a settlement agreement that provides meaningful relief to the class, and the relief offered addresses the serious concerns associated with disclosure of personal identification information. There are at least 607 class members who will be compensated with approximately $1,261,366.16 for out-of-pocket losses, 812 class members who will be compensated approximately $62,758.00 for lost time, and at least 819 class members who will receive free credit monitoring. *See* Doc. 70 ¶ 19. Class counsel obtained a successful result in this case.

### 8. Awards in Similar Cases

Class counsel offered their opinion and the opinion of an independent, experienced class action attorney that the requested fees are comparable to awarded fees in similar lawsuits. Doc. 65 ¶¶ 7–9; *see* Doc. 66 at 18–19. In addition, the court's independent review of other data breach, class action lawsuits confirms that the requested fees are in line with fees awarded in similar cases. *See Equifax*, 999 F.3d at 1278 (affirming the district court's award of a fee that was 20.36 percent of the common settlement fund); *In re Arby's Rest. Grp., Inc. Data Sec. Litig.*, No. 1:17-cv-1035-WMR, 2019 WL 2720818, at *3 (N.D. Ga. June, 6, 2019) (approving a fee that was approximately 29.6 percent of the common settlement fund); *In re Home*

*Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-02583-TWT, 2016 WL 11299474, at * (N.D. Ga. Aug. 23, 2016) (approving a fee that was approximately twenty-eight percent of the common settlement fund). This factor weighs in favor of approval of the requested fees.

### 9. The Number of Objections

There are no objections to the request for attorney's fees. This factor weighs in favor of approval of the requested fees.

### 10. The Time Required to Reach a Settlement

Although the parties reached a settlement early in the litigation, the record reflects the parties' months-long negotiation process. The parties conducted limited discovery to analyze the strength and weaknesses of their respective positions. *See* Doc. 62 ¶ 6. They "engaged in discussions and the exchange of information preparing for mediation, including written communications and separate conversations with the mediator," and then mediated the case for approximately eight hours on September 20, 2023. *Id.* ¶ 7. They continued negotiations in the months following until they "reached an understanding in principle on November 17, 2023, concerning the essential terms of a proposed settlement." *Id.* ¶ 9. This months-long negotiation process demonstrates that the settlement was reached through extensive and diligent efforts by counsel for all sides. This factor weighs in favor of approval of the requested fees.

**11. Non-Monetary Benefits Conferred Upon the Class by the Settlement**

Under the terms of the settlement agreement, Angeion will offer one year of free credit monitoring to the class. Doc. 61-1 at 42. This credit monitoring service constitutes a measure targeted to help remedy the risks associated with the disclosure of personal identification information. This factor weighs in favor of approving the requested fees.

The request for $343,750 in attorney's fees and costs is reasonable and justified under the facts of this case.

### III.    CONCLUSION

For the reasons stated above, the court (1) **GRANTS** final approval of the settlement; (2) **CERTIFIES** the settlement class pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3); and (3) **GRANTS** in full Ms. Madkin's request for attorney's fees in the amount of $343,750 to be paid out of the settlement fund in accordance with the terms of the settlement. The court reserves jurisdiction over the implementation of the settlement and **ORDERS** the parties to file a joint notice informing the court when the settlement fund has been funded.

This case is **DISMISSED** with prejudice. Each party shall bear his own costs except as provided in the settlement. The Clerk of the Court is **DIRECTED** to close this case.

**DONE** and **ORDERED** this 12th day of March, 2025.

**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE